## CLYDE CAMPBELL UNIVERSITY SHOP AND
### Don Hambrick v. CAMPBELL-BELL, INC., d/b/a
## UNIVERSITY SHOP

5-4387 422 S. W. 2d 875

### Opinion delivered January 22, 1968

*E. J. Bell* and *James W. Gallman,* for appellant.

*Murphy & Burch,* for appellee.

PAUL WARD, Justice. Involved in this litigation is the use of a trade-name. The issue and the pertinent facts involved are sufficiently stated in the pleading which are now summarized.

The *Complaint,* filed on September 21, 1966, by appellee—Campbell-Bell, Inc. d/b/a University Shop, in essence states:

a. It is a domestic corporation doing business in Fayetteville for the past six years under the name of "University Shop", situated at 643 Dickson St.—on the University Campus—selling men's clothes.

b. Appellant—Clyde Campbell University Shop—is a non-resident corporation doing a similar business in Fayetteville under the name of "Clyde Campbell University Shop", situated at 613 Dickson St.—on the University Campus. It began doing business on August 15, 1966.

c. Appellant adopted and used its name "with the intent and for the purpose of defrauding the plaintiff and appropriating for their own use and benefit the goodwill of plaintiff's business and to delude and deceive the plaintiff's customers and the public in general into the belief that the business of the defendants was in fact a new location or extension of plaintiff's business". In the alternative, if appellant did not so intend, their actions caused the same result.

d. Because of the manner and length of time in which appellee has conducted and advertised its business under the name of "University Shop" that name has acquired an exclusive identification with appellee's business, and has acquired a "secondary" name and meaning. As a result of appellant's actions and the similarity of the *two* names, the public and customers of appellee have been misled to the damage of appellee's profits and business.

e. Wherefore plaintiff (appellee) prays that appellant be enjoined and restrained from using the name "University Shop" or "Clyde Campbell University Shop".

Appellants' *answer*, filed October 7, 1966, is set out below in material parts.

a. Denies they intended to, or did, infringe on any alleged rights of appellee.

b. Appellant operates under its corporate name chosen long before doing business in Fayetteville; it operates four other shops under said name at different places (in Texas); "University Shop", as the designation of a store, is prevalent over the country and such use denotes the location of said shop near a university; appellant has scrupulously avoided any advertising or act that might lead to confusion of the public as to the separate identities of appellant and appellee.

After a full hearing, at which several witnesses for both sides gave oral testimony and numerous exhibits pertaining principally to newspaper advertisements were introduced the trial court, on February 1, 1967, entered a decree enjoining appellant "from using the term 'University Shop' in their trade-name, advertising, telephone listings, signs or other designations pertaining to . . . its place of business located in the City of Fayetteville".

At the close of all the testimony the trial court made exhaustive findings of fact and conclusions of law covering seventeen pages in the transcript. Believing it will tend to abbreviate references to the testimony introduced and the various issues raised, we hereafter refer briefly to portions of said findings.

a. The basic underlying note of the infringement —on trade-name cases—is that it simply is not basically a fair thing; it just isn't right for a business man to engage in business under a name which is so nearly similar to the name used by another business man that the general public is likely to be confused or misled.

b. The first question is, does the proof in this case show such a similarity of names as to cause confusion of identities?

c. The next question is whether the name of appellee is of such nature that it should be protected. This calls for a distinction between the theory of *secondary meaning* and *generic terms.* Sometimes even generic words may acquire a *secondary* meaning.

d. Another question then is whether the term "University Shop" or the single word "University" has a *secondary* meaning under the facts in this case. If the facts so show, "then the right to relief is well established".

e. After detailing essential parts of the testimony the court states: "I think there is ample evidence to show that defendants were put on notice; that they were knowingly opening up a business which might well lead to this very thing . . . . The preponderance of evidence shows appellee is entitled to the relief sought."

f. The defendant is enjoined from the use of the word "University" in any part in any or all parts of its business operation in Fayetteville. This means, as a practical matter, that it may no longer use the total term "University Shop".

A careful examination of the record leads us to conclude that the findings of the trial court are supported by the weight of the testimony, and that the conclusion reached must be affirmed. The weight of the testimony fully establishes: Appellee began business at its present location on Dickson Street, under the name "University Shop", six years before this suit was filed; During this period the name (in Old English) has been used in advertising; Appellant, being aware of the above facts and having been warned by appellee of the similarity of

names established its store on the same street and very close to the location of appellee; Appellant used the same old English style of lettering in its advertisements; Because of these similarities there was an actual confusion in the delivery of mail and the payment of bills; Exhibits of newspaper advertisements show a striking similarity in lettering and form.

Some of the general rules applicable to this situation were quoted in *Liberty Cash Groceries, Inc.* v. *Adkins,* 190 Ark. 911, 82 S. W. 2d 28, as follows:

" 'An infringement on a trade name is such a colorable imitation of the name that the general public, in the exercise of reasonable care, might think that it is the name of the one first appropriating it. Where such a similarity occurs, it tends to divert trade from a business rival who has previously adopted its name and operates as a fraud which may be restrained by injunction, although the prior user may not have an exclusive right to the use of the name.' "

Appellant ably contends that "University" is a word commonly used by the general public and cannot, therefore, be exclusively appropriated by anyone as a trade-name. It must be conceded that, ordinarily, such contention has merit. However, our decisions and others hold that, under some circumstances, such a common word can acquire a "secondary" meaning which entitles it to a protection as a trade name. It was so held in the *Adkins* case, *supra.*

In the cited case appellee established retail grocery stores in the vicinity of Little Rock and North Little Rock, under the trade-name "Liberty Home Stores". —Five years later appellant announced its intention to establish and operate a grocery store on West Capitol Avenue in Little Rock under the trade-name of "Liberty Cash Groceries, Inc.". Appellee sought to enjoin appellant, and was sustained by the trial court. On appeal,

this Court, in affirming the trial court, made certain statements which are copied below:

> Appellant's contention for reversal is that the use by appellant of the word 'Liberty' as a part of his trade-name is not descriptively similar to appellee's trade-name, and that the word 'Liberty' is a common word of general use, and appellees have no legal right to its exclusive use. Our case of *Fine* v. *Lockwood*, 179 Ark. 222, 14 S. W. (2) 1109, is cited by appellant as decisive of the contention urged. We can not agree that the case cited controls the case under consideration. There appellant had not operated a store under his trade-name prior to the institution of the suit in that trade territory. . .

> Here the testimony reflects, and the chancellor so found, that appellees had operated their respective grocery stores in the vicinity of Little Rock and North Little Rock for some five or six years under the trade name of 'Liberty Home Stores', and that the trade name of 'Liberty Home Stores' had thereby acquired a distinctive secondary meaning in the trade territory in the vicinity of Little Rock and North Little Rock".

Based on the facts involved, and considering the findings of the trial court, we are unable to distinguish the *Adkins* case from the one here presented.

Appellant, for a reversal, rely on *Fine* v. *Lockwood*, 179 Ark. 222, 14 S. W. 2d 1109, and *Save-A-Stop, Inc.;* v. *Save-A-Stop, Inc.*, 230 Ark. 319, 322 S. W. 2d 454 The *Fine* case was distinguished, as above noted, in the Adkins case. The other case is clearly distinguishable on the ground (as noted in the case) that both parties were engaged in the wholesale business as opposed to retail.

Affirmed.