Preston WILLIAMS and Gail Williams d/b/a
Vowels Print Factory *v*, Richard SPELIC and
Barbara Spelic d/b/a Vowels Office Supply

92-33                                    844 S.W.2d 305

Supreme Court of Arkansas
Opinion delivered December 14, 1992

*Lyons & Emerson*, by: *Jim Lyons*, for appellant.

*Dennis Zolper & Assoc., P.A.*, by: *Dennis Zolper*, for appellee.

ROBERT H. DUDLEY, Justice. The issue in this case is whether the buyers of a business purchased the trade name and are entitled to protect that trade name. The issue is primarily a factual one, and we affirm since the chancellor's findings of fact are not clearly erroneous.

In 1932, Mr. Vowels started a business in Jonesboro named "Vowels Printing." The printing business was apparently successful, and about twenty years later Mr. Vowels expanded the business to include the sale of office supplies. At that time, in the early 1950's, the name of the business was changed to "Vowels Printing and Office Supply." In 1984, the name was changed to "Vowels Printing and Supply." Preston Williams, whose wife Gayle is the daughter of Mr. Vowels, became involved in the business in 1984. In 1987, the Williamses began to physically separate the office supply section of the business from the printing section, and, by May, 1988, they had moved the printing part of the business across the street from the office supply business. The two sections of the business were operated as one proprietorship. They both had the same tax identification number, and if either or both sections did work for a customer, the account receivable was payable to the one business, Vowels Printing and Supply.

A real estate broker contacted the buyers, Richard and

Barbara Spelic, and asked if they would be interested in buying "Vowels." The husband, buyer Richard Spelic, knew "Vowels had an excellent reputation in town, and I thought buying Vowels would be a good opportunity for us to continue in the community and keep the Vowels' name to go on." The husband had been inside the business twice and the wife only once, when, on May 13, 1988, they signed an agreement to purchase "Vowels Office Supply." They testified that they were told that the Williamses would retain the printing business across the street, but, they were not told that the sellers would try to retain the name "Vowels." At the time of the sale, the sign on the front of the building housing the printing business across the street did not contain the name "Vowels;" it reflected only "The Printing Factory."

The sales agreement, a form with blank lines that were filled in by the real estate agent, provided a sales price of $80,000.00 with $3,000 being allocated to a covenant not to compete. Under this covenant, the sellers, the Williamses, were not to engage in the sale of office supplies for seven years, and the buyers, the Spelics, were not to engage in printing for seven years. More important, the agreement provided that the buyers paid $1,500 for goodwill and $1,500 for the business trade name. The Bill of Sale provides that the buyers purchased the "business trade name, goodwill and any and all other assets, tangible or intangible, belonging or used in connection with or otherwise pertaining to the operation of Vowels Office Supply. . . ."

At the time of the sale, the sellers had listed the office supply business in the telephone directories as "Vowels Office Supply" and had separately listed the printing business as "Vowels Printing Factory." The sellers, in contradiction of the testimony of the buyers, testified that they told the buyers of the telephone book listings.

The office supply building was being remodeled at the time of the sale, and soon after the sale was completed, a dispute arose over the cost of some of the remodeling. The buyers testified that at that time, the sellers placed a large sign on the front of their printing business that read "Vowels Print Supply" and began answering their phone by saying "Vowels." The buyers were also answering their phone by saying "Vowels." Customers, suppliers, and creditors were confused, and the sellers' mail was sometimes

delivered to the buyers and vice versa. The buyers later violated the covenant not to compete by taking a printing order for a local bank. A complaint and counterclaim was eventually filed. Ultimately, the chancellor enjoined the buyers from violating the covenant not to compete and enjoined the sellers from using the name "Vowels" in their printing business.

The chancellor's findings of fact included the following:

> [T]he name "Vowels" has . . . been an accepted and acknowledged local synonym for office supplies and/or printing. As such, "Vowels" has a special significance and meaning and to permit the continued use of the name "Vowels" in . . . [sellers'] business can only result in hopeless confusion for the general public.

The chancellor then applied Ark. Code Ann. § 4-71-113 (Repl. 1991), which provides:

> Likelihood of injury to . . . a trade name valid at common law, shall be grounds for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

■ The sellers make four assignments of error, the first of which is that the trial court erred because the parties were not in competition with each other. The argument overlooks the plain language of the statute. The statute recognizes the value of a trade name in its own right and affords protection to the owner against its unauthorized use. Neither competition nor confusion on the part of customers is required. The issue is not one of competition, but of the *likelihood* of dilution of the value of the trade name as an asset by its use by someone other than the owner.

■ The sellers' second assignment is that under the case of *Howe Scale Co.* v. *Wyckoff*, 198 U.S. 118 (1905), a family name may be used in the absence of fraud or deceit unless the exclusive right to the family name is contracted away. Again, the argument overlooks the statute. The chancellor impliedly found that the sellers sold the trade name "Vowels," that there is a likelihood of injury to it, and that proof was sufficient for the issuance of an injunction under the statute.

■ A part of the argument on this point is that the sellers

did not convey the trade name "Vowels" used in the printing business. The proof shows the buyers paid $1,500 to the sellers for the business trade name. The proof showed that the name "Vowels" had been used in Jonesboro for over fifty years, first in 1932 as "Vowels Printing," then, in the early 1950's as "Vowels Printing and Office Supply," and then, in 1984 as "Vowels Printing and Supply." There was substantial testimony, essentially undisputed testimony, from which the chancellor could find that the name "Vowels" carried a good reputation in the community in both office supplies and printing and that the name had acquired a secondary meaning to the purchasing public of quality in both office supplies and printing. The predominant word in the Vowels' trade name used for over fifty years is "Vowels." The buyers testified they were asked by the real estate agent if they wanted to buy "Vowels," that they thought they were buying "Vowels," and that the sellers never disclosed they had any intention of retaining any part of the "Vowels" trade name.

To the contrary, the sellers testified that they told the buyers they were going to use the name "Vowels Printing Factory," and, in addition, the contract provides that the buyers purchased only the name "Vowels Office Supply." The chancellor heard and observed the witnesses and found in favor of the buyers. We cannot say the finding of fact was clearly erroneous.

In his letter opinion, the chancellor wrote, "[T]he existing confusion will ultimately detract from the otherwise separate businesses of the parties, to the detriment of each," and when one considers that three years from now, or seven years from the date of the contract, both parties can compete in both of the businesses, no other conclusion could reasonably have been reached.

■ The sellers' next assignment of error is based on the law of unfair competition, and, again, the argument overlooks the statute. Contained in this assignment is a sub-argument that the chancellor erred in ruling that "the name, 'Vowels' has for many years to my personal knowledge been an accepted and acknowledged local synonym for office supplies and printing." They contend that the chancellor should not have taken judicial notice of the secondary meaning. *See* A.R.E. Rule 201. The sellers are correct. The chancellor should not have taken judicial notice of

the secondary meaning, but it is immaterial in this case because there was sufficient independent proof of the matter. Thus, the error was harmless. *See Arkansas Sav. & Loan Ass'n* v. *Mack Trucks of Ark., Inc.*, 263 Ark. 264, 566 S.W.2d 128 (1978).

■■ The sellers' final argument of error is that the trial court erred in granting the injunction because Vowels is the maiden name of Gayle Vowels Williams. The general rule is that prohibiting an individual from using his or her true surname is to take away his identity, and courts will avoid doing that, if possible. *Societe Vinicole de Champagne* v. *Mumm*, 143 F.2d 240 (2d Cir. 1944). Here, the general rule has no application at all to seller Preston Williams, and seller Gayle Williams did not lose either her surname or her individual identity by the court's ruling. Even if she lost some part of her business name identity, we would not reverse. When a surname is used as a trade name, it risks becoming a symbol of the business and losing its individual identity. *Levitt Corp.* v. *Levitt*, 593 F.2d 463, 468 (2d Cir. 1979) (citing R. Callman, *Unfair Competition, Trademarks and Monopolies*, § 85.2 (d)(1) (3d ed. 1969)). This is especially true when the name is conveyed as goodwill, and, if confusion is likely, there must be some limitation on a seller's unrestricted use of his or her name. *Taylor Wine Co.* v. *Bully Hill Vineyards, Inc.*, 569 F.2d 731, 734 (2d Cir. 1978). In a situation in which an infringer has previously sold his business name with its goodwill, a sweeping injunction is more likely to be an appropriate remedy. *Id.* at 735. When a business purchases goodwill and a trade name, it acquires a valuable property right, and that is the right to inform the public that it possesses the experience and skill symbolized by the original concern. *Levitt Corp.* v. *Levitt*, 593 F.2d 463, 468 (2d Cir. 1979). If the public is confused, the value of the goodwill is diluted. Courts will be especially alert to foreclose attempts by a seller to "keep for himself the essential thing he sold, and also keep the price he got for it." *Guth* v. *Guth Chocolate Co.*, 224 F. 932, 934 (4th Cir. 1915), *cert. denied,* 239 U.S. 640 (1915). Thus, the chancellor could validly issue the sweeping injunction against the use of the maiden name of the sellers.

Affirmed.

HOLT, C.J., GLAZE, and BROWN, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. I cannot agree that the trade name at issue here is Vowels rather than Vowels Office Supply. What was sold by the Williamses and purchased by the Spelics was "Vowels Office Supply." The Offer and Sale Agreement reads in part as follows:

> BUSINESS TRADE NAME: Seller hereby (grants) grants (~~does not grant~~) ------ Buyer effective at the time of closing of escrow, any and all rights which the Seller may have in the trade name <u>Vowels Office Supply</u>.

"Vowels Office Supply" is written in by hand. The value assigned to the trade name was $1,500 out of a total purchase price of $80,000. The sale closed on May 31, 1988.

Shortly thereafter, a joint letter went out to the customers of the former Vowels Printing and Supplies. It spoke of the division of the business into two entities—Vowels Printing Factory and Vowels Office Supplies—and read in part:

> On the first of June, Vowels Printing and Supplies officially became two entities. The printing and copying services, recently relocated at 319 South Church (across the street from the blue awninged Vowels), will be known in the future as Vowels Print Factory. Preston and Gayle Williams will continue as owners and managers of the Print Factory. Barbara, Amber, Donnie, and Gina will be here, as well, to assist you in meeting all of your printing and copying needs.

> The office supply sales will still be located at 324 South Church and be known as Vowels Office Supplies. The new owners, Richard and Barbara Spelic, will be happy to greet all our old customers. Come in and meet them, as well as Jennifer and Carol. Jonnas will remain at Vowels Office Supplies, also, and they all are eager to serve you.

The letter had the names of the Williamses and Spelics typed at the bottom. Barbara Spelic later testified at trial that she did not approve of the letter's being sent but acknowledged that she knew of it and did not tell the Williamses not to send it. The letter, in fact, apparently was sent with bills to customers of the former Vowels Printing and Supplies which benefitted both Vowels Print

Factory and Vowels Office Supply.

A few months after the sale, the Williamses put up a sign with the name "Vowels" in tandem with The Print Factory. The Spelics did not object to this.

The Jonesboro City Directory in 1987-1988 listed both Vowels Print Factory and Vowels Office Supply with different addresses and different telephone numbers. The 1988-1989 Indian County Phone Book listed Vowels Print Factory. The Southwestern Bell Telephone Directory also listed both entries in 1988-1989 in both the white pages and yellow pages. Inexplicably, Barbara Spelic testified that she did not know whether she checked the telephone directories in 1988 to determine if Vowels Print Factory was listed separately.

The genesis for this litigation was a complaint by the Williamses in August 1989 — more than a year after the sale — contending that the Spelics violated the covenant not to compete in the Offer and Acceptance Agreement by taking a printing order from a local bank. The chancellor enjoined this violation. The Spelics never complained about confusion between Vowels Office Supply and Vowels Print Factory until it filed a counterclaim to this lawsuit by the Williamses. The chancellor, nonetheless, enjoined the Williamses from using the trade name Vowels but in doing so found that Vowels had been accepted and acknowledged as a "local synonym for office supplies and/or printing." In effect, the chancellor found that Vowels had a secondary meaning for both office supplies *and* printing.

The fact that the trade name, Vowels Office Supply, was sold is undisputed. Subsequent events, including the letter to customers, evidenced two separate entities, both of which used the name Vowels. The majority concludes, however, that the chancellor was correct in finding that there was the likelihood of injury or dilution to Vowels, a "trade name valid at common law," under the statute. *See* Ark. Code Ann. § 4-71-113 (1987). The focus at trial, however, should have been on the trade name at issue, Vowels Office Supply. It is clear that the Spelics recognized that Vowels Print Factory would continue to be associated with an independent entity based on the letter to customers which they had knowledge of. They undoubtedly also knew that both enterprises were listed in various telephone directories. Yet they

never raised a complaint until they were sued for breach of the non-compete agreement more than a year after the sale.

The chancellor expanded the scope of the trade name purchased by finding that the name Vowels had been bought for the Spelics' exclusive use. That finding impinges on the retained rights of the Williamses in Vowels Print Factory. The chancellor did not find that Vowels had a secondary meaning associated only with the office supply business. On the contrary, he found that Vowels was synonymous with both businesses, which bolsters the Williamses' argument. The statute, § 4-71-113, must be read to protect both trade names. I recognize the heavy burden inherent in holding that a chancellor's factual findings are clearly errone-ous. However, I would do so in this case and reverse the chancellor's order.

HOLT, C.J., and GLAZE, J., join.