TRI-COUNTY FUNERAL SERVICE, INC., d/b/a Howard Funeral Home *v.* EDDIE HOWARD FUNERAL HOME, INC.

97-220 957 S.W.2d 694

Supreme Court of Arkansas
Opinion delivered December 18, 1997

*Horne, Hollingsworth & Parker*, by: *Allan W. Horne* and *Mark H. Allison*, for appellant.

*Blair & Stroud*, by: *J. Scott Davidson* and *Robert D. Stroud*, for appellee.

DAVID NEWBERN, Justice. This is a trade-name infringement case. The appellant, Tri-County Funeral Service, Inc. ("Tri-County"), which does business as Howard Funeral Home in Melbourne, sought an injunction pursuant to Ark. Code Ann. § 4-71-113 (Repl. 1996) to prohibit the appellee, Eddie Howard Funeral Home, Inc., also located in Melbourne, from using the name "Howard" in connection with its funeral business. The Chancellor declined to issue the injunction. Our determination in this *de novo* review is that Tri-County was entitled to the relief sought; thus we reverse the Chancellor's decision.

In 1949, Roman and Wilma Howard began working for the Roller Funeral Home in Melbourne. At some point in the 1950s they left that employment. The funeral home changed hands several times, and Mr. and Mrs. Howard returned as employees in 1961. A Mr. Robinson purchased the business while it was being operated as "McCollum Funeral Home," and in 1968 Mr. Robinson asked the Howards for permission to operate as "Howard Funeral Home," although the Howards owned no interest in the business. Permission was granted.

In 1974, Billy Howard, Mr. and Mrs. Howard's son, joined them as an employee of Howard Funeral Home. In 1978, the business was sold to Justin Jones who, in 1984, sold it to Rhodes-Madden, Inc., the parent company of Tri-County. In the sales agreement, there was a provision selling the name, "Howard Funeral Home." The ensuing bill of sale, however, did not mention the sale of the name. Tri-County continued to operate the business as Howard Funeral Home.

Roman Howard retired sometime during the 1980s. Billy Howard left his employment with the business in 1984. Wilma Howard remained until 1989 when her employment was terminated because of rumors that Billy Howard was attempting to open a competing funeral business.

In 1991, Billy Howard was rehired by Tri-County to manage the business, and he rehired Wilma Howard as an employee. In 1992, Billy Howard hired his younger brother, Eddie Howard, to work in the business. Billy Howard died, and Eddie Howard became the manager in 1994. In 1996, Eddie Howard's employment was terminated due to his apparent efforts to begin a competing business. Wilma Howard then resigned from her employment with Tri-County.

Eddie Howard established "Eddie Howard Funeral Home, Inc.," a corporation of which he and his wife are the only shareholders. Tri-County sued to prevent that corporation from using the Howard name, alleging that the name had acquired a secondary meaning and that it constituted an interest protectable in accordance with § 4-71-113.

Eddie Howard and Wilma Howard intervened in the proceeding with a complaint seeking to enjoin Tri-County from using the name "Howard," alleging that they had not been compensated for the use of the name and seeking to revoke the permission given to Tri-County's predecessor.

At the trial, Robert Eichelberger, secretary-treasurer of the parent company of Tri-County, testified that when his company purchased a funeral home it attempted to keep the same name and employees in the operation so that people may not even realize that a change in ownership has taken place. He testified further that there had been a slight decrease in the business of Howard Funeral Home since the Eddie Howard Funeral Home commenced operations and that some confusion had resulted from the fact that two funeral businesses are now using the Howard name.

The first of two orders issued by the Chancellor denied temporary relief to Tri-County. The Chancellor emphasized that the Howards had not been compensated for the use of their name and that Tri-County had failed to show that any property interest had been "damaged" by use of the name by Eddie Howard Funeral Home, Inc. The subsequent order denied permanent relief but ordered Eddie Howard to return a customer list to Tri-County. In his order denying relief to Tri-County, the Chancellor dismissed the Howards' claim in intervention, and no appeal has been

taken from that aspect of the order. Nor has the order to return the list been appealed by Eddie Howard.

The relevant language of § 4-71-113 is as follows: "Likelihood of injury to business reputation or of dilution of the distinctive quality of . . . a trade name valid at common law, shall be grounds for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods and services." Eddie Howard Funeral Home, Inc., concedes that the Chancellor applied the wrong standard in holding that there had been no showing of "damage" to an interest held by Tri-County, as the statute imposes no such requirement. The question for us is thus whether Tri-County had a "trade name valid at common law," and if so, whether there was "likelihood of injury" to Tri-County's "business reputation" or "dilution" of its trade name. In addition, we consider whether Eddie Howard has an inherent right to use his own name in his business even if it runs afoul of an established secondary meaning and the protection offered by the statute.

■ Generally speaking, the granting or denying of an injunction is a matter within the discretion of a chancellor, and we do not reverse unless there has been a clearly erroneous factual determination, *Warren v. Robinson*, 288 Ark. 249, 704 S.W.2d 614 (1986); *Bassett v. City of Fayetteville*, 282 Ark. 395, 669 S.W.2d 1 (1984), or unless the decision is contrary to some rule of equity or the result of improvident exercise of judicial power. *Mills v. Patton*, 233 Ark. 755, 346 S.W.2d 689 (1961). We agree, however, with Tri-County's assertion that when a statute provides terms that constitute grounds for issuing an injunction, a chancellor's discretion is somewhat circumscribed. *See State Industrial Accident Comm'n v. Miller*, 162 P.2d 146, 150 (Or. 1945)(stating injunction should issue when statute imposes "positive duty" "upon the court to grant injunctive relief . . . when the conditions set forth therein are made to appear"); *Vicksburg, S. & P. Ry. Co. v. Webster Sand, Gravel & Constr. Co.*, 62 So. 140, 143 (La. 1913); *Sawyer v. Termohlen*, 122 N.W. 924, 925 (Iowa 1909).

## 1. Trade name property

Eddie Howard Funeral Home, Inc., suggests that Tri-County was not entitled to an injunction because it has no valid interest or property right in using the "Howard" name in connection with its business. The suggestion seems to be that Tri-County had not acquired an interest in the Howard name because (1) neither it, nor any of its predecessors, paid consideration to the Howards for the use of their name; (2) the Howards had orally given permission to Mr. Robertson to use their name, and that permission was later revoked with respect to Tri-County; and (3) the right to use the Howard name was not mentioned in the bill of sale and thus was not acquired by Tri-County from Mr. Jones. No authority is cited by the Howards or the Chancellor for the proposition that successful acquisition of a trade name depends on those factors.

There is ample authority for the proposition that a person acquires a property right in a trade name merely by using the name in connection with a particular business for a period of time.

■ "Generally, the word 'trade name' applies to a business and its good will, while the word 'trade-mark' applies to the commodity to which it is affixed." *King Pharr Canning Operations, Inc. v. Pharr Canning Co.*, 85 F. Supp. 150, 157 (W.D. Ark. 1949). "Trade names are afforded protection under the law of unfair competition. They are protected by a registration statute and by the common law. *See* Ark. Stat. Ann. 70-539(E), 70-550 [now Ark. Code Ann. § 4-71-113], and 70-552 (Repl. 1979)." *Pullan v. Fulbright*, 287 Ark. 21, 23, 695 S.W.2d 830, 831 (1985). "[W]hen a name, mark or symbol has acquired a 'secondary meaning,' the original user has a 'property right which equity will protect against unfair appropriation by a competitor.'" *Champions Golf Club, Inc. v. Sunrise Land Corp.*, 846 F. Supp. 742, 757 (W.D. Ark. 1994), *quoting Pullan v. Fulbright, supra.*

■ The concept of "secondary meaning" has been explained as follows:

> There are certain names, marks, and symbols which in their primary sense are merely generic or descriptive and do not ordinarily indicate the origin of goods or services. Such names, marks,

> or symbols, when used in their primary sense, cannot form the subject matter of a trade or service mark. However, a name, mark, or symbol by long and exclusive use and advertising by one person in the sale of his goods and services may become so associated in the public mind with such goods or services that it serves to identify them and distinguish them from the goods or services of others. When such an association exists, the name, mark, or symbol is said to have acquired "secondary meaning" in which the original user has a property right which equity will protect against unfair appropriation by a competitor.

*Pullan v. Fulbright*, 287 Ark. at 23-24, 695 S.W.2d at 831, *quoting Liberty Mut. Ins. Co. v. Liberty Ins. Co. of Tex.*, 185 F.Supp. 895, 903 (E.D. Ark. 1960).

We do not have many cases that thoroughly treat the question of how one acquires a property right in a trade name. Of course, we have recognized that a person may acquire such a right by *purchasing* the name. *See Williams v. Spelic*, 311 Ark. 279, 284, 844 S.W.2d 305, 309 (1992)("When a business purchases goodwill and a trade name, it acquires a valuable property right, and that is the right to inform the public that it possesses the experience and skill symbolized by the original concern."; sale of trade name specifically mentioned in bill of sale).

One may, however, acquire a protectable interest in a trade name, without purchasing the rights to it, simply by using the name in connection with a business over the course of time and giving a "secondary meaning" to the name. *Clyde Campbell University Shop v. Campbell-Bell, Inc.*, 243 Ark. 937, 422 S.W.2d 875 (1968); *Liberty Cash Groceries, Inc., v. Adkins*, 190 Ark. 911, 82 S.W.2d 28 (1935). *See also Champions Golf Club, Inc. v. Sunrise Land Corp.*, 846 F. Supp. at 757 (stating the right to a trademark or trade name "originates in common law by prior appropriation and use"), *citing* 4A RUDOLF CALLMAN, THE LAW OF UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 25.03 (L. Altman ed., 4th ed. 1993); RESTATEMENT OF THE LAW (THIRD) *Unfair Competition* § 18, at p. 184 (1995).

Tri-County has used the Howard name continuously in connection with its business since 1984, and prior owners of the business used the name continuously since 1968. No one else in the

area used that name or a similar name in connection with any business. The Howards, themselves, had never used their own name in connection with a business they owned. Howard Funeral Home was one of only two funeral businesses in the area, and its share of the funeral business was near 70 percent before Eddie Howard opened his business in 1996. Tri-County advertised and promoted its name in various ways.

■ Thus, it is clear that Tri-County went through the necessary steps of acquiring "Howard Funeral Home" as a valid trade name with obvious "secondary meaning." It occurred irrespective of any "permission" initially *given* by the Howards to Mr. Robertson in 1968 and irrespective of the fact that the Howards later purported to *revoke* the permission with respect to Tri-County, after it had used the name beginning in 1984.

■ The Howard name was not previously appropriated when Mr. Robertson began to use it in connection with his funeral business in 1968. It was just a surname, and there is no protection given to a surname until it acquires a secondary meaning. 2 McCarthy on Trademarks and Unfair Competition § 13.02[1], at p. 13-5 (3d ed. 1995). In 1968, the Howards had not used their name in connection with their business; it had not acquired a secondary meaning. Thus, it was not necessary for the Howards to "permit" Mr. Robertson or anyone else to call the business the "Howard Funeral Home" because the Howards had not established a protectable interest in their name.

■ It also was irrelevant that the bill of sale was silent on the matter of whether the right to the Howard Funeral Home trade name passed in the transaction between Mr. Jones and Tri-County. Regardless of what transpired in connection with the bill of sale, Tri-County has continued to use, advertise, and promote the Howard Funeral Home name since 1984. Even if Tri-County did not "acquire" the right to that name at the precise point of the 1984 transaction with Mr. Jones, Tri-County most certainly gave the name a "secondary meaning" in the years thereafter.

## 2. Infringement

 The next question is whether Eddie Howard Funeral Home, Inc., by calling its business the "Eddie Howard Funeral Home," has infringed on Tri-County's trade name, "Howard Funeral Home." According to the statute, Tri-County has presented grounds for an injunction against Eddie Howard Funeral Home, Inc., if the latter's actions have created a "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of . . . a trade name valid at common law." Ark. Code Ann. § 4-71-113 (Repl. 1996). That "likelihood," if established, "*shall* be grounds for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." *Id.* (emphasis added).

 "The issue is . . . one . . . of the *likelihood* of dilution of the value of the trade name as an asset by its use by someone other than the owner." *Williams v. Spelic*, 311 Ark. at 282, 844 S.W.2d at 308. *See also Wood v. Wood's Homes, Inc.*, 519 P.2d 1212, 1215 (Colo.App. 1974)("Nor is it necessary for the plaintiff to prove *present damage,* since the purpose of the action is to prevent the damage which *would* arise if defendant becomes established under the deceptive name.")(emphasis added).

> "An infringement on a trade name is such a colorable imitation of the name that the general public, in the exercise of reasonable care, *might* think that it is the name of the one first appropriating it. Where such a similarity occurs, it *tends* to divert trade from a business rival who has previously adopted its name and operates as a fraud which may be restrained by injunction, although the prior users may not have an exclusive right to the use of the name."

*Liberty Cash Groceries, Inc. v. Adkins*, 190 Ark. at 912, 82 S.W.2d at 28 (emphasis added), *quoting* 26 R.C.L., at p. 876.

 Tri-County demonstrated all that the statute required it to demonstrate to be entitled to injunctive relief. It established at least a likelihood of harm or dilution, given the fact that the names are sufficiently similar, Howard Funeral Home had long established a secondary meaning, and — although seemingly made unnecessary by the statute — there was testimony about name

confusion and a decrease in Howard Funeral Home's business following the opening of Eddie Howard's business.

### 3. The right to use one's own name

Older cases suggested that a junior user, or "second comer," should never be enjoined from using his or her own name in connection with a business, even if a senior user of the same name could be harmed. *See, e.g., Societe Vinicole de Champagne v. Mumm,* 143 F.2d 240, 240 (2d Cir. 1944). As early as 1949, however, Judge John Miller in *King Pharr Canning Operations, Inc. v. Pharr Canning Co.,* 85 F. Supp. 150, 153-54 (W.D. Ark. 1949), rejected the "sacred right" theory in a case involving the federal trade-mark law.

Recent cases reject the idea that a junior user has an absolute or "sacred" right to use his or her own name in business if a first comer has been using that name and has established a secondary meaning. *See generally* Annotation, *Use of "Family Name" by Corporation as Unfair Competition,* 72 A.L.R.3d 8 (1976). *See also* McCARTHY, *supra,* at § 13.03[3], at p. 13-13. Because it may become a trade name subject to the rule of priority in order to prevent deception of the public, one has no absolute right to use one's own name, even honestly, as the name of a business. *John R. Thompson Co. v. Holloway,* 366 F.2d 108, 113 (5th Cir. 1966). *See* McCARTHY, *supra,* at § 13.03[6], at pp. 13-25 to 13-28 (discussing cases imposing "absolute prohibition against use of personal name as business mark").

No doubt one may continue to use one's own name personally even after another has added a secondary meaning to it. The question, however, is whether one may use one's own name in a business if there is a likelihood of dilution of the trade name used by the party having established a secondary meaning or injury to the business reputation of the first user.

In *Williams v. Spelic, supra,* the office-supply portion of a business known as "Vowels Printing and Supply" was sold to Mr. and Mrs. Spelic by Mr. and Mrs. Williams. The Vowels name had been used by Mrs. Williams's father in connection with the business for many years and Vowels apparently was Mrs. Williams's

name prior to her marriage. The part of the business sold was the office-supply portion. The Williamses retained the printing portion that operated across the street from the office-supply store. The Chancellor found that the sales agreement had impliedly sold the Vowels name to the Spelics. The Williamses began using the Vowels name with their printing business. One of the Williamses' arguments on appeal of an injunction against their use of the Vowels name was that "a family name may be used in the absence of fraud or deceit unless the exclusive right to the family name is contracted away." 311 Ark. at 282, 844 S.W.2d at 308. We held that the argument ignored the statutory grounds for injunction, noting that a showing of a likelihood of injury to the trade name was sufficient for the issuance of the injunction.

■ An inescapable conclusion to be drawn from our decision in the *Williams* case is that we reject the "sacred right" argument because, "[w]hen a surname is used as a trade name, it risks becoming a symbol of the business and losing its individual identity." *Id.* at 284, 844 S.W.2d at 309.

### 4. Conclusion

■ The decision of the Chancellor is reversed. Eddie Howard Funeral Home, Inc., is enjoined from using the name "Howard" as part of the name of its business or to identify its business.

IMBER, J., not participating.