ST. PAUL FIRE AND MARINE INSURANCE COMPANY *v.* CRITTENDEN ABSTRACT & TITLE COMPANY, INC.

73-168                                    502 S.W. 2d 100

Opinion delivered December 17, 1973

*Rieves & Rieves,* by: *Donald A. Forrest,* for appellant.

*Spears & Sloan,* for appellee.

CARLETON HARRIS, Chief Justice. On April 23, 1969, W. I. Forrester, an attorney of Memphis, Tennessee, ordered abstract from appellee, Crittenden Abstract & Title Company, Inc., for Lots 1, 1A, 2, 2A, and 3 in Block 4 of Haisch Subdivision. The abstract was completed and delivered on May 20, 1969 to the attorney for Ray-Don Bildors, who examined same and approved the title on the basis of the abstract as delivered; Ray-Don Bildors thereupon acquired the property. In the latter part of November, 1970, it developed that Carrie Arnold Crane claimed title to this property, Crittenden Abstract & Title Company, Inc. learning of this claim about December 28, 1970, and two days later, it was determined by the latter that an instrument had been omitted from the abstract. Prior thereto, appellant, St. Paul Fire and Marine Insurance Company, had issued its Errors and Omissions Policy to appellee, effective from October 23, 1968 to October 23, 1969, and this policy had been renewed for the year October 23, 1969 to October 23, 1970. At that time, appellee changed to Lloyds of London, and the latter company issued its policy effective from October 23, 1970 to October 23, 1971. Both companies denied liability, appellant's denial being based on a provision of the policy reading as follows:

"IV. POLICY PERIOD, TERRITORY. This Policy applies to claims, suits or any other action arising during the Policy period within the United States of America, its territories or possession, resulting from negligent acts, errors or omissions of the Insured, their predecessors or any person now or heretofore employed by the Insured or any predecessor."

Lloyds of London denied liability, basing its contention on the following clause:

"It is understood and agreed that, notwithstanding anything contained herein to the contrary, this Policy shall not indemnify the Assured in respect of any claim made against the Assured by reason of any negligent act, error or omission committed, or alleged to have been committed, prior to . . . . . . . . OCTOBER 23, 1970."

Appellant company denied liability because the abstract company's error was not discovered during the term of its policy, but rather was discovered during the period that the Lloyds of London policy was in effect; Lloyds denied liability because the error was not committed during the term of its policy, and accordingly neither company would accept any responsibility. The lands involved consisted of 1.4 acres, but by the time the controversy arose, the acreage had been sub-divided into lots and blocks, streets had been built, sewers, water, and lights installed, and houses built, and accordingly, the total value of the lands had been greatly enhanced. Mrs. Crane had employed counsel preparatory to instituting suit, and appellee settled the claim on behalf of Ray-Don Bildors for $6,275.00 and the latter was given a deed by Mrs. Crane. Thereafter, on December 31, 1971, Crittenden Abstract & Title Company filed suit in the Crittenden Chancery Court, later transferred to Circuit Court, against appellant company and Crump London Underwriters, Inc.[1] Each company denied liability and on trial, the only witness testifying was Mrs. Margueritte Held, the owner of Crittenden Abstract & Title Company. The court found that the cause of action arose at the time of the delivery of the abstract, and that accordingly there was no liability against Lloyds and the complaint as to this defendant was dismissed. As to appellant, the court held as follows:

"The abstract was made and delivered May 19, 1969. It appears that that was the date the cause of the action arose. At that time that was all that they [St. Paul] claimed, for their reasons for not being liable. They

[1] From the record:

"It is hereby stipulated by and between the attorneys for the plaintiff and Underwriters At Lloyd's, defendant, that the title of this action shall be amended by substituting as defendant herein, Robert Charles Sells as Lead Underwriter subscribing to Certificate of Coverage No. 30780, in the place and stead of Underwriters At Lloyd's.

"It is further stipulated that a final determination or judgment by this Court, or any Court having appellate jurisdiction herein, the right to appeal being expressly reserved, against Robert Charles Sells, a defendant herein, being one of the underwriters at Lloyd's subscribing to insurance described in Certificate of Coverage No. 30780, shall be binding upon all of the underwriters subscribing to said insurance in respect of their liability thereunder, each for his own proper proportionate part, and not jointly or one for another."

did not let the matter go any further than that, just denied at the outset that it was not[2] liable. ***

"From the evidence, it appeared, too, that had she [Margueritte Held] waited and not obtained this best settlement as she could, and at one time that settlement could have been made for $4,000.00 and it had already gone up to $6,000.00, she felt that in view of the improvements, the streets, gutters, utilities, and the residences and other improvements on the property that the suit would be much larger when the title got tied up, and looked a little more than it would be if she could settle it then for the least amount of $6,275.00.

"That was not the ground upon which the company was denying liability; it was denying liability on the ground that it did not arise during the policy period. *** The judgment will go against the St. Paul."

Twelve per cent penalty was allowed and an attorney's fee of $2,000. From the judgment so entered, appellant brings this appeal.

For reversal, it is first asserted that the judgment is erroneous because the claim did not arise during the policy period and appellant cites a Louisiana decision and New Jersey decision in support of this contention. In the Louisiana case, *J. M. Brown Construction Co.* v. *D & M Mechanical Contractors, Inc.* (First Circuit Louisiana), 222 So. 2d 93, the effective dates of the policy were March 6, 1964 through March 6, 1965 and the alleged error occurred during that period; however, demand for indemnification was not made until May 30, 1967, over two years after the error was made, though this fact would not be controlling. The policy, however, provided that the company would indemnify the assured against any claim caused by error or omission made against them during the period of coverage, there being only one exception, viz., claims of which the assured became aware, would be honored after policy expiration provided written notice was given the insurer during the policy term. In *Rotwein* v. *General Accident Group*, 247 A. 2d 370, the New Jersey

---

[2] The word "not" is obviously a typographical error.

case, the policy period was April 15, 1961 through April 14, 1964. In July, 1966, when General Accident no longer was the insurer, the defect in the performance of architectural services was first called to the attention of that company. The policy posed three conditions which must be met before General Accident would be liable, the third of these requiring the reporting and commencement of a claim during the policy period. The opinion recites the fact that defects came to the attention of the parties directly involved as early as 1964 while the policy was still in effect, but General Accident did not receive notice until 1966. In the case presently before us, there was no knowledge of any error until after the St. Paul coverage had expired. Be that as it may, we think the wording of the policy, as well as sound logic, requires the construction reached by the trial court in this case. The *American Heritage Dictionary of the English Language* (1969) defines "arise" as "to come into being; originate." Certainly the error came into being, i.e., originated, while the St. Paul policy was in effect. What appears to be the general rule is succinctly stated in 1 C.J.S., Abstracts of Title, § 13, p. 399, as follows:

> "The right of action against an abstracter for damages resulting from errors, defects, or omissions in an abstract of title prepared by him accrues at the time the examination is made and the abstract prepared and furnished, and not when the wrong is discovered or actual damage results therefrom ***."

Likewise, in 1 Am. Jur. 2d, Abstracts of Title, § 24, p. 245, we find:

> "It is generally held that a cause of action against an abstracter for damages caused by furnishing a defective or incorrect abstract accrues when the examination of the title is reported or the abstract delivered, and the statute of limitations begins to run from the time of the occurrence of the breach of duty, and not from the time of the discovery of the actual damages as a result of the breach. ***"

Strangely enough, it does not appear that this court has passed directly upon the question and no Arkansas

cases are cited by either side. However, in *Adams* v. *Greer,* 114 F. Supp. 770, the United States District Court for the Western District of Arkansas (Fayetteville Division), was called upon to answer the exact question of when a cause of action arose against an abstracter for incorrectly compiling an abstract because of a plea of the statute of limitations. Judge John E. Miller, in a well written opinion, thoroughly discussed this subject as follows:

> "*Russell (& Co.)* v. *Polk County Abstract Co.,* 87 Iowa 233, 54 N.W. 212, 43 Am. St. Rep. 381, was an action against an abstract company for negligence in making an abstract and damages arising on account of such negligence. It was held by the court in that case that the cause of action accrued when the abstract was delivered by the abstract company to the purchaser thereof, and that there was a breach of the contract immediately upon the delivery, and not when the injury occurred or the error was discovered. *Provident Loan Trust Co.* v. *Wolcott,* 5 Kan. App. 473, 47 P. 8, is an action against an abstractor for giving an incorrect certificate of title, and it was held that the cause of action arose at the date of the delivery of the abstract, and not at the time of the consequential damages. *Lattin* v. *Gillette,* 95 Cal. 317, 30 P. 545, 29 Am. St. Rep. 115, was an action against an abstractor for negligence in certifying that a party was the owner, when, in fact, he only had a half interest in the title to the property. It was held that the cause of action accrued at the time of the delivery of the abstract and that the statute of limitations began to run at that time, notwithstanding the fact that the purchaser of the abstract did not discover the defect or error until after the statute of limitations had run, at which time he had to surrender one-half interest in the property. The Missouri courts have reached the same conclusion in *Rankin* v. *Schaeffer,* 4 Mo. App. 108, and *Schade* v. *Gehner,* 133 Mo. 252, 34 S.W. 576. See, also, note to *Equitable Bldg. & Loan Ass'n* v. *Bank of Commerce* (118 Tenn. 678, 102 S.W. 901), 12 L.R.A., N.S., 454. \*\*\*

> "Since the plaintiffs' claim accrued when the amended abstract was delivered by defendant to plaintiffs

and since this occurred more than three years prior to the filing of the suit herein, the claim of plaintiffs is barred by Section 37-206, Ark. Stats. 1947, Annotated, and the motion to dismiss should be sustained."

We hold that the claim arises when the abstract is compiled and delivered and not when the error is discovered.

It is next contended that error was committed in the rendering of the judgment because appellee did not comply with a condition precedent in the policy sued on. This argument has reference to the fact that included in the policy is a provision stating:

"No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company."

Admittedly, no suit was ever filed against the abstract company nor judgment rendered against it, nor did St. Paul agree in writing to any settlement. Accordingly, appellant says that it is not liable. We do not agree. The record reflects that St. Paul Fire and Marine Insurance Company was first notified by letter from Mrs. Held on December 28 that Mrs. Crane was making claim to the aforementioned lands. The company was advised "that since it appears that claim will arise in this matter, I am giving you notice." On January 4, a second letter was sent by Mrs. Held, attaching a letter from the attorney for Ray-Don Bildors, Inc. advising Mrs. Held to call the matter to her insurance company's attention inasmuch as it appeared that a claim would be made by the Cranes. On February 11, 1971, inquiry was made of St. Paul by letter of Mrs. Held asking that the company please advise its intentions regarding the claim. On February 16, Mr. Elliott Slutsky, Claim Loss Representative for St. Paul, replied to Mrs. Held as follows:

"In relation to the above captioned claim, Lloyds of London would be your carrier since the discovery date is within their policy period.

Attached please find a portion of your Abstractors Liability policy with us in which I circle number IV Policy Period, Territory which best describes why Lloyds of Lond[on] would be the carrier in this claim."

On February 18, 1971, William D. Perry, an attorney of Memphis, wrote the attorney for Ray-Don Bildors on behalf of Mrs. Crane, demanding that Ray-Don Bildors execute proper deeds to restore the title back to Mrs. Crane or pay her the reasonable value of the property. Copy of this letter was sent to St. Paul on February 23. Thereafter, on March 11, 1971, Archie M. Clark, Claim Loss Manager for the insurance company, wrote Mrs. Held as follows:

"As our attitude has not changed in connection with the matter, we feel that the burden should be borne by the Lloyds of London; therefore, I would appreciate your advising the principal in this matter."

On May 27, the law firm of Spears & Sloan advised both St. Paul and Lloyds that Mrs. Crane was preparing to file an ejectment suit against the owners of houses located on the lands and, "This will develop into a full blown law suit and would require a great deal of technical proof, surveys, and various other things that would be rather expensive." The letter advised that Mrs. Crane was making claim for $8,000, but that it was believed the claim could be settled for somewhere between $4,500 and $5,000, and it was the opinion of the law firm that "it would be the better part of wisdom to settle it." On June 7, Mr. Clark of St. Paul acknowledged the letter from the law firm and stated:

"I have reviewed the above captioned along with the investigating adjuster, and we do not see how we are involved in this matter in any way. This is due to the fact that our policy expired October 23, 1970, and the date of discovery of this loss was December 23, 1970. Therefore, we have no alternative other than to stay

out of any negotiations that you may have with the Lloyd's policy."

On October 8, the company was advised that the claim had been settled through payment by Crittenden Abstract & Title Company in the amount of $6,275.00, and the matter was thus terminated. Apparently, an identical letter was sent to Lloyds, for the attorneys state:

"If either or both of you wish to reimburse Crittenden Abstract & Title Company, Inc. for the sum of $6,-275.00, you may do so and divide the payment in any manner you see fit but in default of any payment we expect to file a declaratory judgment suit against both of you."

Both companies denied liability.

It is thus apparent that appellant was kept completely informed of developments, and that it not once, but repeatedly, denied liability on the basis of the fact that the error was not discovered during the time that its policy was in effect. The correspondence could not more clearly show that appellant had no intention of doing anything at all. Accordingly, appellee was placed in the position of either settling the claim itself or defending litigation that would bring into the picture numerous additional parties, which, as stated by counsel, would develop into extensive, involved, and expensive litigation; in fact, in studying the record, we agree that there was substantial evidence to the effect that the settlement was wise. To hold with appellant would be to say that appellee, left alone, when appellant should have participated, is penalized for taking action, which in its best judgment, mitigated the damages—damages that under the contract were the responsibility of St. Paul. The general rule is found in 44 Am. Jur. 2d, § 1550, p. 432, as follows:

"An insurer cannot breach its contract by unjustifiably refusing to defend an action against the insured, upon grounds that the claim upon which the action was based was outside the coverage of the policy, and at the same time take advantage of a policy provision prohibiting the insured from settling any claim with-

out the consent of the insurer except at his own cost. Consequently, an insurer's unjustified refusal to defend relieves the insured from his contract obligation not to settle, and the insured is at liberty to make a reasonable settlement or compromise without losing his right to recover on the policy. This rule permitting settlements by the insured despite the presence of a 'no settlement' clause applies regardless of the type of liability policy involved. However, the courts have frequently stressed the fact that in order to bind the insurer the settlement must be reasonable and entered in good faith."

From what has been said, it is apparent that we agree that there is substantial evidence that the settlement was reasonable and entered into in good faith.

Finally, appellant contends that the policy sued on covers only obligations imposed by law upon the insured and appellee settled with a party to whom it had no legal liability. It is pointed out that Mrs. Crane did not contract with the plaintiff for the abstract and in no manner was in privity of contract with the abstract company, i.e., the abstract was not prepared for her use and benefit, and she was a complete stranger to the contract. The case of *Talpey* v. *Wright*, 61 Ark. 275, 32 S.W. 1072, is cited in support of the contention. The facts in *Talpey* are entirely dissimilar to those in the present case. Here, appellee prepared the abstract for Ray-Don Bildors, and it did have an obligation to prepare a correct abstract for that company. Likewise, it apparently being recognized by counsel for Ray-Don, Crane, and appellee, that Mrs. Crane's claim to the land here in question was entirely valid, the abstract company recognized liability to Ray-Don. In settling the claim, Crittenden Abstract & Title Company paid Mrs. Crane—but Mrs. Crane delivered her deed to the property in question to Ray-Don. In other words, appellee simply settled the claim on behalf of Ray-Don, and there certainly seems to be substantial evidence, as already pointed out, that this settlement was prudent and advisable.

Appellee also advances an additional argument which it is contended is applicable to Points II and III, viz., that

St. Paul has estopped itself to deny liability except under paragraph 4 of its policy. This argument relates to the fact that throughout the correspondence between appellant and appellee (heretofore set out), appellant consistently bottomed its denial of liability on the fact that coverage was not furnished under paragraph 4, and appellant never at any time until it amended its pleadings in the trial court, set up these defenses which we have listed under the second and third points. Appellee says that, in reliance upon the position taken by appellant in its letters, it paid the claim and filed its suit to recover payment. In other words, it is argued that appellant, having breached its agreement to defend against the claim, and appellee having taken steps to defend itself, was not thereafter in a position to rely on other provisions. It is true that appellant took a "hands-off" attitude when appellee was threatened with litigation, was well aware of the fact that settlement of the claim was being considered by Crittenden Abstract & Title Company, and subsequently aware that such settlement was made, and it may be that there is merit in this contention. Pertinent authorities are cited to that effect. However, inasmuch as we have found appellant's arguments on these two points to be without merit, there is no need to discuss the question further.

In accordance with what has been said, the judgment is affirmed.

Appellee requests that this court assess an additional attorney's fee against appellant, which we grant, and we are of the view that a reasonable fee for services rendered in this court is $1,500.00.

It is so ordered.