FIRST SERVICE CORPORATION *v.* David L.
SCHUMACHER

CA 85-131 702 S.W.2d 412

Court of Appeals of Arkansas
Division II
Opinion delivered December 18, 1985

*E. DeMatt Henderson* and *Richard H. Wooton*, for appellant.

*Eudox Patterson* and *Charles G. Vaccaro*, for appellee.

LAWSON CLONINGER, Judge. In this appeal from a jury's verdict in a breach of contract action, appellant raises three points for reversal. We affirm in part and reverse in part.

Appellant's predecessor, Southern Service and Management, Inc., a subsidiary of Hot Springs Savings and Loan Association, entered into a written agreement on August 31, 1978, with appellee, a builder, for the construction and sale of speculative homes in its Pine Meadows Subdivision in Hot Springs, Arkansas. The contract provided, among other things, that appellant would finance the project, pay all debts, and refrain from dealing with other speculative builders, while appellee, working for appellant on an exclusive basis, would split the profits from the sale of houses with appellant and receive a management fee of $20,000 per year. Subject to appellee's satisfactory performance, the agreement was not to be terminated until all remaining lots in the subdivision were developed. The contract stated, however, that "If at any point of the agreement all work is halted as the result of [appellant's] exercising its right to limit the number of units or its investment, this agreement may be terminated at the option of [appellant] upon written notice to

[appellee]."

In March, 1980, First Federal Savings and Loan Association of Little Rock acquired Hot Springs Savings and Loan, and First Federal's subsidiary, appellant First Service Corporation, absorbed Southern Service and Management, Inc. Appellant terminated the agreement without written notice on July 15, 1980, by refusing to make additional advances of appellee's management fees. Appellee filed suit for breach of contract on August 1, 1980, seeking compensation for the unpaid management fees, profits on houses already built and sold, and profits on houses to be built on the remaining 134 lots in the subdivision. After trial on October 25 and 26, 1984, the jury rendered a verdict in appellee's favor, awarding him $200,000 in compensatory damages and $200,000 in consequential damages. From that judgment this appeal arises.

Appellant argues in its first point for reversal that the trial court erred in submitting the issue of lost future profits to the jury on the basis of testimony by Barbara McCowan, appellee's bookkeeper. According to appellant, appellee's proof of lost profits was limited to McCowan's testimony, which was based on various settlement sheets from which she concluded that appellee's profit per house was about $2,300, derived from a total profit per house of between $4,500 and $4,600. McCowan's figures, says appellant, did not include as costs allocations attributable to management fees or interest; moreover, the settlement sheets from which she testified reflected only ten of the twenty houses built by appellee.

The proof of lost profits must be shown by evidence which makes it reasonably certain what the party claiming them would have made. *Robertson* v. *Ceola*, 255 Ark. 703, 501 S.W.2d 764 (1973). A party attempting to recover anticipated profits under a contract must present a reasonably complete set of figures and not leave the jury to speculate as to whether there could have been any profits. *Amer. Fid. Fire Ins. Co.* v. *Kennedy Bros. Const., Inc.*, 282 Ark. 545, 670 S.W.2d 798 (1984); *Sumlin* v. *Woodson*, 211 Ark. 214, 199 S.W.2d 936 (1947). The proof must be sufficient to remove the question of profits from the realm of speculation and conjecture. *Robertson* v. *Ceola, supra*. The fact, however, that a party can state the amount of damages he suffered only approximately is not a sufficient reason for disallow-

ing damages if from the approximate estimates a satisfactory conclusion can be reached. If it is reasonably certain that profits would have resulted had the breached contract been carried out, then the complaining party is entitled to recover. *Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985).

In the present case, the record reveals that McCowan's testimony was supported by appellee's testimony and three exhibits detailing costs and profits on three separate completed houses, entitling appellee to $10,273.70. Further, the contract itself provided that the agreement was to cover "all remaining lots" in Units 1 and 2 and that profits were to be divided equally between the parties. Had the contract not been breached, appellee would have been entitled to half the profits from the sale of 134 houses, which, at the estimated figure of $2,300 profit per house, would have amounted to $308,208. The $20,000 annual management fee, unpaid since April, 1980, would have risen, after a period of fifty-four months, to $90,000.18.

 On appeal, we view the evidence in the light most favorable to the appellee and affirm if any substantial evidence supports the jury's verdict. *Jim Halsey Co.* v. *Bonar, supra; Amer. Fid. Fire Ins. Co.* v. *Kennedy, supra.* The weight of the evidence and the credibility of the witnesses are matters for the jury rather than the appellate court, and where there is a conflict in the evidence the determination by the jury of the issues is conclusive. *Stamper* v. *Aluminum & Zinc Die Cast Co.*, 283 Ark. 92, 671 S.W.2d 170 (1984). In the instant case, we believe that the jury had before it sufficient evidence to determine that appellee had suffered a loss of future profits; thus, the issue was properly submitted.

Appellant's second point for reversal, that the trial court erred in denying its motion for a new trial, is more persuasive. The motion stated that the trial court erred in allowing the jury to return both compensatory and consequential damages when no instruction was provided to assist the jury in understanding the meaning of consequential damages.

Appellee had submitted an instruction on consequential damages which was refused by the trial court. Although no alternative instruction defining consequential damages was subsequently requested or given, the trial court employed the term in

the following interrogatory verdict form:

> 1. Do you find from a preponderance of the evidence that the defendants, SOUTHERN SERVICE AND MANAGEMENT, INC. now FIRST SERVICE CORPORATION have committed breach of a contract with the plaintiff, DAVID SCHUMACHER: ANSWER: *Yes.*
>
> *2. If you find that the defendant has committed breach of a contract with the plaintiff, DAVID SCHUMACHER, state the amount of any compensatory damages, such as lost profits and management fees, that you find from a preponderance of the evidence were sustained by the plaintiff, DAVID SCHUMACHER, as a result of the occurrence. *$200,000*
>
> *3. If you find that the defendant has committed breach of a contract with the plaintiff, DAVID SCHUMACHER, state the amount of any consequential damages that you find from a preponderance of the evidence were sustained by the plaintiff, DAVID SCHUMACHER, as a result of the breach of contract. *$200,000.00*
>
> *If your answer to #1 is "no", you need not answer #2 and #3.

/s/ Robert Ross

It is evident from the form that, while compensatory damages are at least explained by illustration, consequential damages are merely named.

 Compensatory, or general, damages are awarded for the purpose of making the injured party in a lawsuit, as nearly as possible, whole. *Dunaway* v. *Troutt*, 232 Ark. 615, 339 S.W.2d 613 (1960). This was accomplished in the present case by the jury's award of $200,000 for lost profits and unpaid management fees. Consequential damages, an aspect of special damages, have been defined as "[s]uch damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." *Black's Law Dictionary*, 5th edn, *citing Richmond Redevelopment and Housing Authority* v. *Laburnum Const. Corp.*, 195 Va. 827, 80 S.E.2d

574 (1954). Consequential damages for breach of contract are recoverable when they may be said to have been fairly within the contemplation of the parties. *Shamburger* v. *Moody*, 322 F.Supp. 196 (E.D. Ark. 1970); aff'd 437 F.2d 1358 (8th Cir. 1971).

Under the circumstances of this case, we do not feel that appellee's evidence that he suffered severe financial problems as a result of appellant's breach constituted consequential damages within the contemplation of the parties when the contract was made. *See* Dobbs, *Remedies* (1973), § 3.2. We must reverse the trial court's judgment on this point and require either a remittitur of $200,000 from appellee or a new trial.

Appellant argues in its third point that the trial court erred in submitting the issue of damages to the jury in the absence of any evidence regarding the "present value" of appellee's future loss. The record indicates that the judge, in the court's instruction number 18, made the following statement to the jury:

> I have used the expression 'Present Value' in these instructions with respect to certain elements of damage which you may find that the Plaintiff will sustain in the future. This means that if you find that the Plaintiff is entitled to recover any elements of damage which require you to determine their present value, you must take into consideration the fact that money recovered will earn interest, if invested, until the time in the future when these losses will actually occur. Therefore, you must reduce any award of such damages to compensate for the reasonable earning power of money, but only as to future damages.

In addition, the court prescribed the following method of calculating lost profits in instruction number 14: "Lost profits are determined by the formula: contract price minus cost minus cost of performance equals profit."

Equipped with these directives, the jury was able to examine the evidence discussed earlier in relation to appellant's first point. A single example will suffice to cover the amount awarded in compensatory damages. Appellee, as the uncontroverted testimony shows, was never paid for the last three houses he built. The profits accrued on the other seventeen houses

totalled $34,071.57, averaging $2,004.21 per house. When the per house profit is multiplied by the 134 remaining lots, the profits lost as of the date of the trial amount to $268,564.14. This evidence was developed in the course of the trial, and, with the court's instructions, provided the jury with ample information on which to base a decision regarding the present value of appellee's future loss.

We find no substantial evidence to support the finding that appellee suffered consequential damages. The judgment is affirmed on the condition that remittitur is entered in the amount of $200,000 within thirty days; otherwise, the judgment will be reversed and the cause remanded for a new trial on all issues.

MAYFIELD and GLAZE, JJ., agree.