# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2138

_____

|  |  |  |
|---|---|---|
| | * | |
| Mountain Pure, LLC.; John Stacks; | * | |
| Beverly Stacks, | * | |
| | * | |
| Plaintiffs – Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Bank of America, N.A., | * | |
| | * | |
| Defendant – Appellee. | * | |
| | * | |

_____

Submitted: October 20, 2006
Filed:  March 12, 2007

_____

Before MELLOY, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

John B. Stacks and Beverly D. Stacks ("the Stacks") and Mountain Pure, LLC, sued Bank of America for breach of contract and promissory estoppel.  The district court granted the Bank summary judgment, finding the Stacks did not suffer damages. Having jurisdiction under 28 U.S.C. § 1291, this court reverses in part, affirms in part, and remands.

## I.

The Stacks own Mountain Pure, LLC, a business that bottles and sells water and juice products. The Stacks obtained a $650,000 line of credit from the Bank – secured by a pledge of stock. Mountain Pure had a $1.85 million term loan with the Bank. In February 2002, the Bank declared Mountain Pure's loan in default, and asked the Stacks to move the line of credit to another lender. On February 14, the Stacks obtained a $1.1 million loan from J.B. Hunt, LLC. The Bank told Hunt's attorney it would release the stock upon total payment of the line of credit. Although the Bank received full payment from Hunt on February 14, it refused to release the stock, claiming "the Stock was also security for the outstanding Term Loan." Hunt's attorney took steps to procure the release of the stock. The Stacks eventually paid the fees of Hunt's attorney. The Bank released the stock on April 11 (or 12) in exchange for a release and indemnification from Hunt. The Stacks claim that the Bank's acts caused them to forfeit a $50,000 discount on a blow mold machine purchased for Mountain Pure.

The Hunt loan provided an initial disbursement of $244,150 to the Stacks, with the "remaining balance available . . . upon Borrower providing evidence satisfactory to Lender [Hunt] that the . . . blow mold machine has been purchased by Borrower." On March 20, Mountain Pure contracted to purchase the machine (at a discounted rate). On April 12, the Stacks showed evidence of the purchase to Hunt, which disbursed the remaining balance on April 14.

The Stacks and Mountain Pure sued the Bank for breach of contract and promissory estoppel, based upon the Bank declaring default on the term loan and its untimely release of the stock. The Stacks and Mountain Pure argued they were forced to sell assets below market value, lose the discount on the machine, incur attorney fees, and lose profits. The district court found all allegations about the term loan subject to arbitration, where they were dismissed with prejudice. As for the claims

about the line of credit, the district court granted summary judgment, finding no damages were suffered.

## II.

This court reviews de novo the grant of summary judgment, viewing the record most favorably to the non-moving party. *See Box v. Principi,* 442 F.3d 692, 696 (8th Cir. 2006); *McClure v. Career Sys. Dev. Corp.,* 447 F.3d 1133, 1135 (8th Cir. 2006). Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56(c)**; *Grey v. City of Oak Grove, Mo.,* 396 F.3d 1031, 1034 (8th Cir. 2005).

## A.

The Stacks first assert that the "district court simply ignored proof that the Stacks incurred attorney's fees as a direct result of the bank's refusal to release the stock." The Bank counters that attorney fees are unrecoverable "consequential damages." While finding the basic facts about the release of stock and the attorney fees, the district court did not directly rule on the Stacks' argument that attorney fees incurred to recover the stock were damages.

"Consequential damages are those damages that do not flow directly and immediately from the breach, but only from some of the consequences or results of the breach." *See Bank of Am. v. C.D. Smith Motor Co.,* 106 S.W.3d 425, 431 (Ark. 2003); *Dawson v. Temps Plus, Inc.,* 987 S.W.2d 722, 728 (Ark. 1999). To recover consequential damages, "the plaintiff must prove more than the defendant's mere knowledge that a breach of contract will entail special damages to the plaintiff; it must also appear that the defendant at least tacitly agreed to assume responsibility." *See C.D. Smith Motor Co.,* 106 S.W.3d at 431.

The issue in this case is what the Bank knew and tacitly agreed to in a line of credit governed by and construed in accordance with the laws of the State of Arkansas. The traditional rule in Arkansas was that "attorney's fees are not awarded unless expressly provided for by statute or rule." *See Sec. Pac. Hous. Servs. v. Friddle,* 866 S.W.2d 375, 379 (Ark. 1993); *Damron v. Univ. Estates, Phase II,* 750 S.W.2d 402, 404 (Ark. 1988); *Harper v. Wheatley Implement Co.,* 643 S.W.2d 537, 541 (Ark. 1982).

Attorney fees for "implied indemnification" in negligence actions are disallowed. *See Jean-Pierre v. Plantation Homes Crittenden,* 89 S.W.3d 337, 342 (Ark. 2002). There, the plaintiff sued for negligence; the defendant filed a third-party complaint for indemnity against Dr. Jean-Pierre. The trial court awarded the defendant attorney fees as part of the indemnity against Dr. Jean-Pierre. The Arkansas Supreme Court reversed because "the trial court's order here offered no statutory authority for awarding attorneys' fees to [defendant], and because that award was contrary to the general rule against awarding such fees in the absence of a statute or rule." *Id.* at 342.

The *Jean-Pierre* case, a negligence case, does not control a contract/promissory estoppel case. "Arkansas law does provide for attorney's fees for breach of contract." *See Gill v. Transcriptions, Inc.,* 892 S.W.2d 258, 261 (Ark. 1995), *citing* **Ark. Code Ann. § 16-22-308**. Most relevant here, Arkansas courts allow attorney fees incurred in order to recover property. *See McQuillan v. Mercedes-Benz Credit Corp.,* 961 S.W.2d 729, 734 (Ark. 1998) (damages allowed when creditor incurred attorney fees in attempt to recover collateral); *see also NEF v. AG Servs. of Am., Inc.,* 86 S.W.3d 4, 8 (Ark. App. 2002) (the Arkansas Supreme Court allows damages for "legal fees incurred in attempting to recover collateral"); **1 Howard W. Brill, Arkansas Practice Series: Law of Damages § 11:1,** at 159-60 (5th ed. 2004) ("a monetary award in a replevin, or alternatively a conversion, action may include the amount expended by

the property owner for attorney fees and costs in an attempt to recover the property extrajudicially").

In light of this Arkansas law, the Bank knew when it extended the line of credit that recovering collateral would entail special damages of attorney fees, and it tacitly agreed to pay such special damages. Viewing the facts most favorably to the Stacks, attorney fees were incurred as a result of the Bank's delay in releasing the stock. According to Hunt's attorney, the Bank told him it would release the stock upon receiving total payment for the line of credit. When the Bank received payment, however, it refused to release the collateral for almost two months. The attorney took steps to procure the release of the stock, which the Stacks eventually paid for as attorney fees.

Summary judgment as to the claim for attorney fees is reversed.

B.

The Stacks next contend that the Bank's failure to timely release the stock caused them another kind of damage, loss of a $50,000 discount on a machine. The Bank presented evidence that Mountain Pure received the discount. The Stacks eventually filed an affidavit claiming they lost an "additional discount" as part of a three-machine agreement. The district court ruled:

> The Court also agrees with defendant that John's May 3rd affidavit is contradictory to the facts alleged in the complaint, the facts argued by plaintiffs up until the May 3rd pleading, John's prior depositions and affidavit, and all the documents that have been submitted. Everything reflects that there was just one blow mold machine at issue for which a discount was received – not three as asserted in the latest John affidavit – and plaintiffs have not submitted *any* documents that support the affidavit's assertions

nor have they tried to explain the discrepancy between their prior position and the latest affidavit.

The district court concluded that the "contradictory affidavit is insufficient to create a genuine issue of material fact." *See **Bass v. City of Sioux Falls,*** 232 F.3d 615, 618 (8th Cir. 2000), *quoting **Wilson v. Westinghouse Elec. Corp.,*** 838 F.2d 286, 289 (8th Cir. 1988) ("district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before"). The district court exercised extreme caution and articulated with care its reasons for finding the last affidavit contradictory. *See **City of St. Joseph v. Southwestern Bell Tel.,*** 439 F.3d 468, 476 (8th Cir. 2006). On appeal, the Stacks assert the "necessity of mentioning three machines did not arise until the bank claimed that the Stacks received a discount on the machine in question." As the district court ruled, this assertion is so contradictory to everything else that it raised only a sham issue. The court properly granted summary judgment as to the discount.

C.

Finally, the Stacks argue that the Bank's refusal to timely release the stock made Hunt delay disbursing the remaining balance of a loan. As a result, they claim the damages of lost profits, sale of assets below market value, and interest and fees in a separate lawsuit.

The district court found that Hunt's disbursement was punctual in accordance with its contract with the Stacks, and not affected by the Bank's untimely release of the stock. The contract provides: "The remaining balance available on the Note may be advanced upon Borrower providing evidence satisfactory to Lender that the . . . blow mold machine has been purchased by Borrower." When the Stacks did provide evidence to Hunt on April 12 that a machine was purchased, Hunt promptly disbursed the remaining balance on April 14.

The Stacks believe that submitting evidence of the machine purchase would have been "futile" until the Bank released the stock because the disbursement was on hold until then. They rely on the testimony of Hunt's attorney: "I think after the stock release got held up we were not willing to do anything else until we kind of got that issue taken care of." The Bank emphasizes the uncertainty of this testimony. A few questions before the just-quoted answer, the attorney says: "I don't know how the purchase of equipment ever worked out. To be honest, I don't remember if we ever forwarded or advanced the second part of that loan, the $200,000. I don't recall if we ever made that advance." When asked why Hunt did not make the final advance, the attorney responded, "maybe he never asked for it. I don't know."

Viewing the facts favorably to the Stacks, the contradictory testimony of Hunt's attorney does not establish that the Bank's untimely release of the stock caused a delay in disbursement of the remaining balance. *See **Prosser v. Ross,*** 70 F.3d 1005, 1009 (8th Cir. 1995) ("We are mindful of our obligation to credit all of the evidence that favors the nonmovant . . . but we are not aware of any duty on our part to prune a witness's testimony so as to create a triable issue when the witness flatly contradicts himself in other parts of his testimony"). As the district court found, Hunt's disbursement was in accordance with its contract with the Stacks. The district court properly granted summary judgment as to these claims.

## III.

The judgment of the district court is reversed in part, affirmed in part, and the case remanded.

_____