Bert S. HYDE, et al. *v.* C M VENDING CO., INC.

85-157                                           703 S.W.2d 862

Supreme Court of Arkansas
Opinion delivered February 18, 1986
[Substituted Opinion on Denial of Rehearing March 17, 1986.*]

---

* Purtle, J., not participating.

*Gordon & Gordon, P.A.*, by: *Allen Gordon*; and *Peel & Eddy*, by: *Richard Peel*, for appellants.

*Mobley & Smith*, by: *William F. Smith*, for appellee.

DAVID NEWBERN, Justice. The principal question presented

by the appellants is whether a covenant not to compete, contained in a contract for the sale of a business, is unreasonable due to its length of duration and thus unenforceable. The chancellor upheld the provision, and we agree that it was not of an unreasonable duration under the circumstances presented here. The appellants further contend the chancellor erred in awarding an injunction enforcing the covenant against some of them who were not parties to the contract which contained the covenant. We agree with the appellants on this point and thus modify the injunction. We also agree with the appellants' argument that the chancellor erred in awarding damages for breach of the covenant to the extent the damages were to accrue after the effective date of the injunction, and we reduce the damages accordingly.

■ On cross appeal, it is contended the chancellor erred in computing the damages for breach of the covenant. If there was error, it favored the appellee and was not the error argued by the appellee. Therefore, we affirm on cross appeal. We will not address the error favoring the appellee because the appellants did not raise any question of the amount of damages in their principal brief on appeal. The appellants argue incorrectness of the court's damages calculation only in their reply brief responding to the cross appeal. Appellants may not raise an error for the first time in the reply brief, as the appellee has no opportunity to respond. Thus we will not consider it. *Meyers* v. *Muuss*, 281 Ark. 188, 662 S.W.2d 805 (1984).

In 1972 Hyde Vending Co., Inc., sold its food and drink vending business to C M Vending Company, Inc. The Hyde company retained its music and some of its cigarette vending operation, but it transferred to C M its food and drink vending machines, trucks, and other equipment, all of which was listed in an "exhibit" to the contract, and exclusive vending agreements in certain listed industrial and other plant locations.

The covenant not to compete, which was drafted by Hyde's attorneys, was as follows:

> Hyde and each of its stockholders hereby agrees that from and after the closing none of them will, without C M's prior written consent, directly or indirectly own, manage, operate, join, control, or participate in the ownership, management, operation, or control of, or be connected in

any manner with, any business, either directly or indirectly in competition with C M, or become interested in any competitor of C M, within a period of five (5) years after payment in full of the purchase price as herein provided and within a radius of fifty miles of the City of Russellville, Arkansas; provided, however, that Hyde shall have the right to maintain certain cigarette vending machines and certain coin operated record playing music machines as specifically listed and described on Exhibit "C" attached hereto, and that it and its stockholders may, as a corporation or as individuals, enter into the music vending machine business, only, without being in violation of this provision; and provided further, that C M will not, during the same period herein enter into the music vending machine business; and, provided further, that either of the parties hereto may in writing waive any portion or all of this particular covenant not to compete.

The stockholders in the Hyde company were Bert Hyde and Nancy Hyde. Their son, David Hyde, was not a stockholder at the time the covenant not to compete was entered. He acquired some shares in December, 1978, and held them only about six months. Thus, David Hyde did not own shares in the Hyde company at the time the covenant was alleged to have been breached.

The C M Company successfully bid for the exclusive food and beverage vending contract at the Arkansas Nuclear One (ANO) plant in 1979. That contract expired in 1984 at which time it was obtained by Valley Vending, Inc., which was owned by David Hyde, Donna Walker, Bert Lynch and Randy Talkington. The evidence is undisputed that Bert Hyde made unsecured loans to Valley Vending and advised and assisted the business in other ways which caused the chancellor to hold the covenant not to compete had been breached. The appellants do not question the sufficiency of the evidence to establish breach of the covenant, assuming its validity.

### 1. Reasonableness of the Covenant

The appellants do not contest the reasonableness of the geographical coverage of the covenant. Rather they say only it is too long in duration. It began to run at the closing of the sale of the food and beverage business of Hyde to C M, and it was to continue

until five years after C M had paid Hyde in full. Given the contract's provision that C M would not be allowed to pay the debt completely until eight years after closing, the minimum duration of the covenant was thirteen years. As full payment was required within ten years, the covenant had a maximum duration of fifteen years. It thus was within the power of C M to extend the duration of the covenant, as it did in this case, by two years. We note that as the covenant was mutual in nature, the extension not only gave C M additional protection with respect to food and beverage vending, but it extended the protection afforded to Hyde with respect to music and cigarette vending.

A contract in restraint of trade, such as a covenant not to compete, is not invalid if it is reasonable with respect to time and place. *Bloom* v. *Home Insurance Agency*, 91 Ark. 367, 121 S.W. 293 (1909); *Webster* v. *Williams*, 62 Ark. 101, 34 S.W. 537 (1896). The reasonableness of duration of a covenant not to compete after sale of a business is to be judged in the light of accompanying circumstances. *Madison Bank & Trust* v. *First National Bank of Huntsville*, 276 Ark. 405, 635 S.W.2d 268 (1982). This court has upheld such covenants lasting five years, *Bledsoe* v. *Carpenter*, 160 Ark. 349, 254 S.W. 677 (1923); ten years, *Madison Bank & Trust* v. *First National Bank of Huntsville, supra*; twenty years, *Robins* v. *Plant*, 174 Ark. 639, 297 S.W. 1027 (1927); and without time limit, *Wright* v. *Marshall*, 182 Ark. 890, 33 S.W.2d 43 (1930); *Hultsman* v. *Carroll*, 177 Ark. 432, 6 S.W.2d 551 (1928). While the issue in *Wright* v. *Marshall, supra*, was apparently not the duration of the covenant, we recited the familiar rule that:

> [s]uch contracts are intended to secure to the purchaser the good will of the business; and, as a guaranty, the vendor agrees not to engage in like business at that place. The courts recognize that in such cases the vendor has received an equivalent to abstain from business at the place where it was formerly conducted. [182 Ark. at 891-892, 33 S.W.2d at 44.]

The only cases cited by the appellant in which we have refused to uphold covenants not to compete have been employment contracts to which we apply a stricter standard. *See Madison Bank & Trust* v. *First National Bank of Hunstville,*

*supra.*

■ The seller of a business who finances the sale by, in effect, lending the purchase money to the buyer has an obvious incentive not to compete with his buyer while some of the purchase price is still owed to him. The seller logically wants the buyer to succeed so he can pay off the debt to the seller and not jeopardize the contract of sale. We can imagine many situations in which it would be reasonable for a company just getting on its feet after paying off the seller to need more time to establish itself before being required to compete with the seller. More importantly, however, in this case the seller did not go out of the vending machine business. Hyde retained the music and cigarette business as well as a kitchen which at one point was rented to Valley Vending, Inc., when Valley began to compete with C M. Thus, unlike the seller who rids himself of the tools of his trade, the contacts, and the "good will" of the operation, Hyde remained poised to resume food and beverage vending. Under these circumstances the covenant not to compete was of reasonable duration. We are not persuaded by the appellants' argument that C M had no protectible interest, such as trade secrets, customer lists, or special licenses. In some of the sale of business cases noted above we approved covenants not to compete where the business was no less mundane or more secretive or specialized than the vending machine business, *e.g., Bledsoe* v. *Carpenter, supra;* (tailoring, cleaning and pressing); *Robins* v. *Plant, supra,* (cotton gin); *Wright* v. *Marshall, supra,* (restaurant).

## 2. The Injunction

■ The chancellor enjoined breach of the covenant. The judgment does not specify to whom the injunction is directed. To the extent it may be considered to enjoint the non-corporate, individual appellants from breaching the contract, it must only apply to Bert and Nancy Hyde, as they are the only appellants who are parties to the contract. The other non-corporate, individual appellants however, as well as Valley Vending, Inc., should be enjoined only from aiding or abetting Bert or Nancy Hyde from breaching the contract. *See Daughtry* v. *Capital Gas Co.,* 285 Ala. 89, 229 So. 2d 480 (1969). As equity cases are reviewed de novo, *Apple* v. *Cooper,* 263 Ark. 467, 565 S.W.2d 436 (1978), this court may modify the injunction.

### 3. Damages

The appellants devote two points in their principal brief to damages. First, they contend no damages should have been awarded due to the invalidity of the covenant. As we hold the covenant to be valid, we need not go further on that point. Second, they contend the court awarded an injunction as well as damages which would result from conduct enjoined; in other words, these are damages for future misconduct in which the appellants will be unable to engage if the injunction stands. In particular, the court found C M would have gotten not only the ANO contract beginning September 1, 1984, but would have obtained a renewal of it September 1, 1987. The court added $22,476.30 for profits C M would lose in the three and one-half months from the renewal of the contract on September 1, 1987, until the covenant not to compete expired December 15, 1987. As the injunction will prohibit Bert and Nancy Hyde and Valley Vending, Inc., from competing with C M, they will not be allowed to renew the contract with ANO. The judgment is thus modified by reducing the damages awarded for loss of the ANO contract from $253,661.13 to $231,184.83.

■ The chancellor's judgment recited that the damages were awarded against all of the appellants for "breach of the covenant." The appellee argues that, as only Hyde Vending Co., Inc., Bert Hyde and Nancy Hyde were parties to the covenant, the damages awarded jointly and severally against the other individual appellants must have been based on some tort theory such as intentional interference with a contractual relationship. There is no indication from the record and certainly none from the judgment that any such liability was determined. As the appellants other than Hyde Vending Co., Bert Hyde and Nancy Hyde were not parties to the covenant, they are not liable for damages resulting from its breach, and the judgment must be modified in this respect as well.

### 4. Cross Appeal

In calculating the damages to C M for loss of the ANO contract, the court used the gross profit C M had made in the last three years of its contract with ANO and allowed a recovery of 25 percent, presumably as a reasonable net profit loss. The court found C M made a gross profit, less ten percent commission to

ANO, of $924,739.31 over thirty-six months. Twenty-five percent of that figure was found to be $231,184.83. Dividing by 36, he obtained a monthly profit figure of $6,421.80.

■ The appellee contends the percentage to be used should have been 44.64 percent rather than 25 percent because Valley Vending, Inc., was making that much more gross profit. It is enough to say that the profits earned by the party allegedly in breach of the covenant are irrelevant to profits which would have been earned by the appellee had there been no breach. *Sumlin* v. *Woodson*, 211 Ark. 214, 199 S.W.2d 936 (1947).

## 5. Conclusion

The injunction is modified to enjoin appellants Bert Hyde and Nancy Hyde from further breaching the covenant not to compete and to enjoin Valley Vending, Inc., Donna Walker, David Hyde, Bert Lynch and Randy Talkington from aiding or abetting Bert or Nancy Hyde in breaching the covenant not to compete. Damages from the appellants to the appellee are reduced from $253,661.13 to $231,184.83. The decree is further modified to reflect that these damages are awarded jointly and severally against Hyde Vending Co., Inc., and its stockholders, i.e., Bert Hyde and Nancy Hyde, but not against the other appellants. The judgment of the trial court is otherwise affirmed on appeal. We also affirm on cross appeal.

PURTLE, J., not participating.