EAST POINSETT COUNTY SCHOOL DISTRICT NO. 14,
Clyde Eason, Harold Tyler and Gary Weathers
*v.* Marolyn Massey

94-12                                              876 S.W.2d 573

Supreme Court of Arkansas
Opinion delivered May 31, 1994

*Bill W. Bristow*, for appellants.

*Richard Rhodes*, for appellees.

ROBERT L. BROWN, Justice. This appeal is the second to arise out of the consolidation agreement between the Lepanto and Tyronza School Districts. *See East Poinsett County School District No. 14* v. *Massey*, 315 Ark. 163, 866 S.W.2d 369 (1993). The agreement resulted in a consolidated school district named the East Poinsett County School District. The current appeal raises the question of whether the transfer of the consolidated junior high

school from Tyronza to Lepanto was effective in light of the fact that a quorum of the East Poinsett County School District, as originally constituted, was not present at the meeting when the move was approved. We affirm the chancery court's decision that a legal quorum did not attend.

The consolidation agreement between the Lepanto and Tyronza School Districts which was entered into in 1986 provided that the Tyronza campus would accommodate school children from both districts for the junior high grades 7-9 and that the Lepanto campus would be used for the high school grades of 10-12. Under the consolidation agreement, the consolidated School District was to have a school board of six members, with three being from the former Lepanto School District and three from the former Tyronza School District. On August 10, 1992, the school board for the consolidated School District met but only the three members of the former Lepanto School District attended. Prior to that meeting on August 3, 1992, Linda Hinton, a board member representing the former Tyronza School District, resigned. Regarding the other two missing Tyronza members, one was absent due to required service in the National Guard, and the third simply did not attend.

At the August 10, 1992 school board meeting the three former Lepanto members voted to transfer the junior high school from Tyronza to Lepanto. One week later the appellee, Marolyn Massey, on behalf of a class of Tyronza residents sued the School District, its superintendent, and the three Lepanto members for violation of the consolidation agreement and prayed that the chancery court enjoin the school board and superintendent from moving the junior high school to Lepanto. After the complaint was filed, the superintendent instituted the move of the junior high school to Lepanto.

In a first amended complaint, Massey further alleged that a quorum of school board members was not present on August 10, 1992, to take official action and that at a subsequent board meeting on October 12, 1992, the action taken by the board was invalid because a board member had not been duly sworn in as a member. In a second amended complaint, Massey joined Linda Hinton, the former board member from Tyronza, as a party plaintiff. Hinton made the additional allegation in support of the

injunction that the three Lepanto school board members had promised her that the Tyronza members should not fear missing a board meeting because the Lepanto members would not vote to move the junior high school without all of the Tyronza members present. Massey's prayer for relief in her first complaint was for an injunction against moving the junior high school to Lepanto. In her first amended complaint she prayed for an injunction ordering a return of the junior high school to Tyronza. That was also the prayer for relief in the second amended complaint.

Trial of the matter commenced on July 19, 1993. Counsel for the School District noted that the time for responding to the second amended complaint had not yet expired, and that the issue of promissory estoppel raised in that complaint should, as a result, not be tried. The chancery court agreed. At the trial, testimony was taken from school board members, the superintendent, and principals and teachers on the advantages and disadvantages of moving the junior high school to Lepanto.

Following the trial, the chancery court issued an order wherein it discussed and dismissed as not dispositive several legal theories for relief propounded by Massey in her various complaints. The court found that a legal quorum of the board was not present at the August 10, 1992 meeting and, thus, concluded that the board action taken in moving the junior high school to Lepanto was void. The court granted the injunction to return the junior high school to Tyronza, effective July 1, 1994, and stated that the court's intent was for the order to be treated as final and that an appeal be taken "with all deliberate speed." As agreed, the court did not consider or discuss the issue of promissory estoppel raised by Linda Hinton. The School District together with the three board members from Lepanto now appeal on the basis that a legal quorum was present at the August meeting.

## I. APPEAL FROM INJUNCTION

We first consider whether the chancery court's failure to include a Rule 54(b) certification in its order dealing with Linda Hinton's issue of promissory estoppel runs afoul of the rule and our caselaw. *See Davis* v. *Wausau Ins. Co.*, 315 Ark. 330, 867 S.W.2d 444 (1993); *Franklin* v. *Osca, Inc.*, 308 Ark. 409, 825 S.W.2d 812 (1992). Linda Hinton's theory in support

of the injunction clearly was treated as separate from the other issues raised and held in abeyance by the chancery court for development at a later time. Since this issue supporting injunctive relief made by a new party in the second amended complaint was not disposed of, the chancery court's order did not conclude the rights of all of the parties and was not final.

■■ Nevertheless, the appeal before us is one from an injunction, and our Rules of Appellate procedure provide for an appeal from:

> 6. An interlocutory order by which an injunction is granted, continued, modified, refused, or dissolved, or by which an application to dissolve or modify an injunction is refused.

Ark. R. App. P. 2(a)(6). In our cases, we have stated that a mandatory injunction is appealable under Rule 2(a)(6). *Tate* v. *Sharpe,* 300 Ark. 126, 777 S.W.2d 215 (1989). Rule 2(a)(6) is a distinct basis for appeal from the rule providing for appeals from a "final judgment or decree." Ark. R. App. P. 2(a)(1) & (6); *see also Tate* v. *Sharpe, supra.*

We, therefore, have before us an order which is not final with regard to all of the parties but which is appealable under a specific provision of our Appellate Rules dealing with injunctions. The question then is whether 2(a)(6) providing for appeals from injunctions represents an exception to Ark. R. Civ. P. 54(b), which requires that all claims relating to all parties be disposed of prefatory to appeal.

■ In an analogous case involving an appeal from an answer which had been stricken under Ark. R. App. P. 2(a)(4), we upheld the appeal and considered the case on the merits. *See Arnold Fireworks Display, Inc.* v. *Schmidt,* 307 Ark. 316, 820 S.W.2d 444 (1991). In *Arnold Fireworks,* we held that even though the order striking the answer was not final, the specific provision authorizing an appeal under those circumstances controlled over the general provisions in Ark. R. App. P. 2(a)(1) and Ark. R. Civ. P. 54(b). The same holds true in the case before us. The specific authority for an appeal from an injunction should control over the absence of finality in the court's order. We will proceed, therefore, to address the merits of this case.

## II. LEGAL QUORUM

The appellants, including the School District, urge on appeal that a legal quorum was present on August 10, 1992, and successfully effected the transfer of the junior high school to Lepanto. They point out that because one board member had resigned on August 3, 1992, there were only five active board members at the time of the meeting in question.

■  The chancery court looked in part to statutory law regarding votes of boards of directors for school districts to resolve this question: "(4) For the purposes of this section, a quorum shall be a majority of the membership of the board." Ark. Code Ann. § 6-13-619(4) (1987). This statute, unhappily, does not resolve the issue raised in that it can be read to mean a quorum of the board as originally constituted or a quorum of the board comprised of remaining active members. Nor do we believe, as appellants contend, that the statute requiring a majority of the remaining school board members to fill a vacancy controls this situation. *See* Ark. Code Ann. § 6-13-611(a) (1987).

■  The pivotal issue in this case is whether the resignation of a board member reduces board membership and likewise reduces the number of members required to constitute a quorum. The authorities vary in their findings on this issue. What appears to be the prevailing view is best expressed by *Corpus Juris Secundum*:

> Where such vacancies occur in the membership of a board as to reduce its number below that of a quorum of the board as originally constituted, the board is without power to take any action; but the mere existence of a vacancy or vacancies does not prevent the board from acting as such, as long as a quorum remains.

73 C.J.S., *Schools and School Districts* § 123 (1952); *see also* *Clark* v. *North Bay Village*, 54 So.2d 240 (Fla. 1951).

■  The position of the appellants that a quorum pertaining to a five-member board is all that was required after Linda Hinton's resignation does not withstand scrutiny. Such a liberal interpretation would mean that two members of a three-member quorum would be a majority of a six-member school board and

could effect board business. This argument may have some surface appeal because of the necessity of continuing school business even in the face of a resignation. However, the requirement of a quorum is a protection against totally unrepresentative action in the name of the full body by a rump section of the membership. *See Robert's Rules of Order* 20 (Sarah Corbin Robert et al. eds., 1990). The appellants' interpretation is at odds, in our judgment, with the concept behind the quorum mandate, and we agree with the chancery court that a quorum of the original board, that is, four members, was required to be present to conduct the business of the board on August 10, 1992. Thus, the action taken by three members of the board was a nullity.

### III. MANDATORY INJUNCTION

██ The School District next claims that the chancery court erred in issuing a mandatory injunction ordering the return of the junior high school to Tyronza, effective July 1, 1994. This court does not reverse the granting of an injunction absent a manifest abuse of discretion by the chancery court. *Ark. State Board of Pharmacy* v. *Troilett*, 249 Ark. 1102, 463 S.W.2d 383 (1971). Moreover, a court may not interfere with a school board in the exercise of its discretion unless there is clear and convincing evidence of abuse by that board. *Leola School District* v. *McMahan*, 289 Ark. 496, 712 S.W.2d 903 (1986); *Lee* v. *Big Flat Public Schools*, 280 Ark. 377, 658 S.W.2d 389 (1983). On the other hand, a court may substitute its judgment for that of a school board when the board has acted arbitrarily, capriciously, or contrary to law. *Springdale Bd. of Educ.* v. *Bowman*, 294 Ark. 66, 740 S.W.2d 909 (1987).

██ Because we have concluded that a quorum of the school board did not exist at the August 10, 1992 meeting, its actions on that date were contrary to law. Ark. Code Ann. § 6-13-619(c) (1987). As the vote of the school board transferring the junior high school to Lepanto was a nullity, the subsequent action of the superintendent to effect that decision was also invalid. Though we do not consider the question of whether it is in the best interest of the School District for the junior high school to remain in Lepanto, there is clearly evidence of record that a Lepanto junior high school irreparably harms Tyronza residents and that they have no adequate remedy at law. Under these facts it

was entirely proper for the chancery court to order the return of the junior high school to Tyronza.

Affirmed.