Omar JARAKI, M.D. *v.* CARDIOLOGY ASSOCIATES of NORTHEAST ARKANSAS, P.A.

CA 01-309 55 S.W.3d 799

Court of Appeals of Arkansas
Division I
Opinion delivered October 3, 2001
[Petition for rehearing denied November 7, 2001.]

*Lyons, Emerson & Cone, P.L.C.*, by: *Jim Lyons*, for appellant.

*Orr, Scholtens, Willhite & Averitt, PLC*, by: *Chris A. Averitt* and *Jay Scholtens*, for appellee.

LARRY D. VAUGHT, Judge. Dr. Omar Jaraki appeals from an order of the Craighead County Chancery Court enforcing a covenant not to compete and enjoining him from the practice of medicine within a seventy-five mile radius of Jonesboro, Arkansas, for a period of two years from the date of entry of the order. Appellant contends that the covenant is void and unenforceable because (1) it violates the public policy of this state that prohibits unreasonable restraints on trade, (2) there is no valid interest in need of protection, (3) the geographic restriction is too broad, and (4) the temporal limitation is unreasonable. Appellant also argues that the chancellor erred in finding that he breached the notice provision contained in his employment contract. Finally, appellant raises an evidentiary objection. We find that the injunction is unreasonable and reverse.

Cardiology Associates of Northeast Arkansas (CANEA) is a medical corporation that employs doctors specializing in the field of cardiology. Dr. Omar Jaraki is a cardiologist who has completed a fellowship in electrophysiology (E.P.). An E.P. cardiologist tests, evaluates, and treats rhythm disturbances of the heart. E.P. cardiology services are most often performed after a primary care physician refers a patient to a cardiologist, after which a cardiologist refers the patient to an E.P. cardiologist.

It takes approximately seven general cardiologists to provide referrals sufficient to justify the presence of one E.P. cardiologist. Prior to Dr. Jaraki being employed by CANEA, there were no practicing E.P. cardiologists in Jonesboro. It was the practice in Jonesboro to refer cardiology patients in need of E.P. services to Little Rock or Memphis.

In order to acquire the services of an "in-house" E.P. cardiologist, on or about April 17, 2000, CANEA employed Dr. Jaraki. CANEA and Dr. Jaraki entered into an employment agreement ("Employment Agreement"), which was to continue for two years unless terminated by ninety days' written notice given by either party. CANEA agreed to pay Dr. Jaraki $265,000 a year in salary, plus a bonus. In the Employment Agreement the parties also agreed that, in the event that the agreement was terminated prior to its expiration, Dr. Jaraki would not practice within a seventy-five mile radius of CANEA's principal office for a period of twenty-four months (the "non-compete").

On December 5, 2000, Dr. Jaraki gave written notice to CANEA that he was resigning on January 5, 2001. On December 21, 2000, Dr. Jaraki's access to CANEA (and its charts, file materials and the database) was terminated. Thereafter, on December 27, 2000, CANEA filed an action in the Chancery Court of Craighead County seeking a temporary restraining order, a preliminary injunction, a permanent injunction, declaratory relief, and damages.

The chancellor entered an *ex parte* order on December 28, 2000, restraining Dr. Jaraki from "competing with plaintiff in violation of the employment agreement, from entering plaintiff's place of business, from contacting plaintiff's patients, referring physicians and/or medical suppliers within the geographical location described in the employment agreement, or from taking any action to the detriment of plaintiff." At a hearing on January 8, 2001, the chancery court considered and rejected Dr. Jaraki's motion to set aside the *ex parte* order.

On January 19 and 23, 2001, the chancellor heard the petition for temporary injunctive relief, and entered his opinion and order upholding the non-compete in the Employment Agreement as valid and enforceable. The court reasoned that Dr. Jaraki was fully aware of the covenants in the Employment Agreement, that CANEA had complied with its obligation, and that CANEA had a legitimate interest to be protected by the non-compete over and above merely prohibiting ordinary competition. The chancellor further found that enforcing the non-compete did not violate public policy. From the granting of CANEA's petition for injunction comes this appeal.

We first consider whether the chancery court's failure to include a certification in its order dealing with the non-compete injunction, as set forth in Rule 54(b)of the Arkansas Rules of Civil Procedure, precludes our consideration of this appeal. This question presents a jurisdictional issue, which the court may raise on its own motion. *Barr v. Richardson,* 314 Ark. 294, 862 S.W.2d 253 (1993). The injunction clearly was treated as separate from the other issues raised and held in abeyance by the chancery court for development at a later time. Because issues relating to bonus fees and contempt were not disposed of, the chancery court's order did not conclude the rights of all of the parties and was not final.

Nevertheless, the appeal before us is one from an injunction, and our rules of appellate procedure provide for an appeal from:

> 6. An interlocutory order by which an injunction is granted, continued, modified, refused, or dissolved, or by which an application to dissolve or modify an injunction is refused.

Ark. R. App. P. 2(a)(6). The supreme court has stated that a mandatory injunction is appealable under Rule 2(a)(6), *Tate v. Sharpe,* 300 Ark. 126, 777 S.W.2d 215 (1989), and has held as we also hold that the specific authority of an appeal from an injunction controls over the general requirement for finality contained in Rule 54(b). *See East Poinsett Cty. Sch. Dist #14 v. Massey,* 317 Ark. 219, 876 S.W.2d 573 (1994). We, therefore, proceed to address the merits of this case.

A chancery court's cases are reviewed *de novo* on appeal, and the appellate court will not reverse unless the chancellor's findings are clearly erroneous or clearly against the preponderance of the evidence. *Dillard v. Pickler,* 68 Ark. App. 256, 6 S.W.3d 128

(1999). A chancery court's finding of fact is clearly erroneous when after reviewing all the evidence, the court is left with a definite and firm conviction that a mistake has been committed even though there is evidence to support the chancery court's decision. *Id*. Because the question of the preponderance of the evidence turns largely on the credibility of the witnesses, the appellate court defers to the chancellor's superior position to assess the credibility of witnesses and the weight to be accorded to their testimony. *Moon v. Moon Enters. Inc.*, 65 Ark. App. 246, 986 S.W.2d 134 (1999).

 Covenants not to compete are not looked upon with favor by the law. *Federated Mut. Ins. Co. v. Bennett*, 36 Ark. App. 99, 818 S.W.2d 596 (1991). In order for such a covenant to be enforceable, three requirements must be met: (1) the covenantee must have a valid interest to protect; (2) the geographical restriction must not be overly broad; (3) a reasonable time limit must be imposed. *Id*. The Arkansas Supreme Court has recently discussed covenants not to compete:

> Arkansas has followed the trend in this area by requiring a party challenging the validity of a covenant to show that it is unreasonable and contrary to public policy. *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 987 S.W.2d 722 (1999). Without statutory authorization or, some dominant policy justification, a contract in restraint of trade is unreasonable if it is based on a promise to refrain from competition that is not ancillary to a contract of employment or to a contract for the transfer of goodwill or other property. However, the law will not protect parties against ordinary competition. *Id*. This court has recognized that covenants not to compete in employment contracts are subject to stricter scrutiny than those connected with a sale of a business. We review cases involving covenants not to compete on a case-by-case basis. *Id*.

*Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 417, 994 S.W.2d 468, 472 (1999).

### Public Policy

 Appellant first asserts that covenants not to compete violate the public policy of our state. Appellant correctly argues that *Duffner v. Alberty*, 19 Ark. App. 137, 718 S.W. 2d 111 (1986), establishes that it is contrary to public policy to unduly restrict the public's right of access to the physicians of their choice. Therefore, we must determine if the contract provision prohibiting appellant

from practicing medicine within seventy-five miles of Jonesboro, for a period of two-years, constitutes an undue interference with the interests of the public right of availability of the cardiologist it prefers to use and if the covenant's enforcement would result in an unreasonable restraint of trade.

■■ The burden is on the party challenging the validity of the covenant to show that it is unreasonable and contrary to public policy. *Madison Bank and Trust v. First Nat'l Bank*, 276 Ark. 405, 634 S.W.2d 268 (1982). Further, covenants not to compete in employment contracts are subject to a stricter scrutiny than those connected with a sale of a business. *Hyde v. C M Vending Company*, 288 Ark. 218, 703 S.W.2d 862 (1986).

■ Covenants not to compete are not a *per se* violation of our state's public policy. We are mindful of the *Duffner* requirement that the validity of each covenant be examined on a case-by-case basis. Therefore, we must examine the interest that CANEA is attempting to protect, and then determine to what extent, if any, the non-compete prohibits ordinary trade.

### Interest to Protect

■ We begin our analysis by considering what, if any, valid interest CANEA has that is in need of protection.

> Where a covenant not to compete grows out of an employment relationship, the courts have found an interest sufficient to warrant enforcement of the covenant only in those cases where the covenantee provided special training, or made available trade secrets, confidential business information or customer lists, and then only if it is found that the associate was able to use information so obtained to gain an unfair competitive advantage.

*Federated Mut. Ins. Co.*, 36 Ark. App. at 102, 818 S.W.2d at 598. The primary interest that appellee argues is in need of protection is its substantial patient base and network of referring physicians throughout the non-compete territory. CANEA argues that a network of referring physicians is akin to customer lists and trade secrets, and these relationships are protected by CANEA in order to maintain goodwill and reputation. In response, Dr. Jaraki argues that appellee's referring physicians could be identified by looking up the names of physicians in the telephone book or observing the patient's hospital chart, and that when a customer list can be readily

ascertained, the list is not protected. *Allen v. Johar, Inc.,* 308 Ark. 45, 823 S.W.2d 824 (1992).

■ In the case at bar, the fact that Dr. Jaraki's patients were referred to him by appellee is persuasive evidence that he has benefitted from his relationship with CANEA. An extensive referral base established over a fifteen- to sixteen-year period is reflective of CANEA's goodwill and reputation; however, we are not convinced that it is an interest in need of protection. The physicians that are included on the CANEA list, presumably, are not cardiologists. If the non-compete did not exist, there is nothing that would prevent those physicians from referring their patients (in need of general cardiologist services) to CANEA, and then CANEA referring the patients to either an in-house E.P. cardiologist or to an E.P. in Memphis or Little Rock. Additionally, appellee admitted that it would no longer refer patients to Dr. Jaraki and that the seven cardiologists on staff would provide enough referrals to support a full-time E.P. cardiologist.

■ Appellee responds that there are only ten practicing cardiologists in Jonesboro, and that if Dr. Jaraki were permitted to remain in Jonesboro, it may be difficult for CANEA to recruit another E.P. However, any incoming E.P. (associated with CANEA) would be well provided for, and Dr. Jaraki would be without the requisite cardiologist referral base. If there are too few remaining cardiologists to supply referrals for Dr. Jaraki to exclusively practice E.P., he may then engage in general cardiology.

■ We next consider whether Dr. Jaraki received any special training in general cardiology from the doctors at CANEA. The president of Cardiology Associates, Dr. Roger Hill, did perform some general procedures with Dr. Jaraki observing. However, there is no evidence that during these procedures Dr. Jaraki received "special" training that would allow him to gain an unfair competitive advantage over CANEA. Dr. Jaraki is a cardiologist with a sub-speciality in E.P. cardiology, and any general practice of cardiology he engages in would amount to no more than "ordinary competition."

*Geographic Area*

■ ■ We are also persuaded that the geographic area included in the non-compete is too broad. The geographic area in a

covenant not to compete must be limited in order to be enforceable. The restraint imposed upon one party must not be greater than is reasonably necessary for protecting the other party. *Federated Mut. Ins. Co. v. Bennett,* 36 Ark. App. 99, 818 S.W.2d 596 (1991). In determining whether the geographic area is reasonable, the trade area of the former employer is viewed. Where a geographic restriction is greater than the trade area, the restriction is too broad and the covenant not to compete is void. *Compare All-State Supply v. Fisher,* 252 Ark. 295, 483 S.W.2d 210 (1972) (statewide restriction valid where employer and employee conducted business statewide).

The trade area included in the non-compete enforced against appellant covers (at least some of) the city of Memphis, Tennessee, and many of the E.P. cardiology facilities in Memphis. In response, appellee argues that none of the E.P. facilities in Memphis are within seventy-five miles "driving distance" from Jonesboro. Additionally, appellee admits that Memphis is not part of its referral base, but counters that appellant testified that he has no intention of moving to Memphis.

It is simply not reasonable to restrict Dr. Jaraki (regardless of his current intent) from practicing in a large market like Memphis, especially when Memphis is not part of CANEA's referral base. The non-compete does not contemplate "driving distance" and refers only to a "seventy-five mile radius." Therefore, at least part of Memphis is included in the restriction. By including the city of Memphis in the scope of the non-compete's geographic restriction, appellee more broadly limited appellant from practicing medicine than is reasonably necessary to protect appellee's trade area.

The non-compete is unenforceable because no valid interest exists that is in need of protection and the geographic limitations are too broad. The injunctive order is reversed, and all other questions and controversies are remanded for final resolution.

Reversed and remanded.

PITTMAN and NEAL, JJ., agree.