The Honorable Lindsley Smith State Representative 340 North Rollston Avenue Fayetteville, Arkansas 72701-4178
Dear Representative Smith:
I am writing in response to your request for an opinion on the following facts and question:
 In March 2002, the City of Fayetteville, Arkansas, passed Ordinance 4379, exercising its authority under A.C.A. § 14-51-201(c) to add two (2) additional members to its Board of Civil Service Commissioners, bringing the number to seven (7). Another Code section, A.C.A. § 14-50-208 states: "Three members of the civil service commission shall constitute a quorum for transacting the business of the commission."
 Question. Does the three-member quorum apply to a seven-member Board, or is a majority of the Board's total membership (in this case 4 members) required to constitute a quorum for transacting business?
RESPONSE
In my opinion the applicable statute, which is in all likelihood A.C.A. § 14-51-208, rather than 14-50-208, should be read as having been impliedly amended in those cities that have increased the Board's membership from five to seven members. As a consequence, in my opinion, a quorum of the board in those cities is four, a majority of the board's total membership.
The first statute about which you inquire is A.C.A. §14-51-201(Repl. 1998). It is found in a subchapter governing the boards of civil service commissions for police and fire departments. The statute was originally adopted in 1949, but subsection (c)(1), the particular subsection relevant to your request regarding expanding the board's membership, was added later, in 1993. See Acts 1993, No. 206. The statute provides in pertinent part as follows:
14-51-201. Appointment of members.
 (a) In all cities of the first class having a civil service system, the city's governing body shall, by ordinance, name five (5) upright and intelligent citizens of their cities as a board of civil service commissioners for the police and fire departments or the nonuniformed employees.
* * *
 (c)(1) In all cities of the first class having a civil service system, the governing body may, by ordinance, add two (2) more members to its civil service commission. The law applicable to the commission shall apply to the additional members, except that in each such city, the first two (2) additional members appointed pursuant to this subsection shall serve staggered terms to be determined by lot so that one (1) will serve a three-year term and one (1) a six-year term, and their successors shall serve six-year terms.
The second statute you cite is A.C.A. § 14-50-208 (Repl. 1998). It provides that "Three (3) members of the civil service commission shall constitute a quorum for transacting the business of the commission." This statute is found in a different subchapter from the first statute you cited and it governs the creation of civil service commissions in cities of the first class with populations of twenty thousand or more but less than seventy-five thousand for "nonuniformed" employees. A.C.A. §14-50-101. This subchapter was originally enacted in 1963 and its intention was that "it be the only [act] under which first-class cities with a population of at least 20,000 but less than 75,000 inhabitants can establish a civil service system for nonuniformed employees. . . ." Acts 1963, § 20. It also contained a similar provision allowing the expansion of such boards by two members only in certain cities. See uncodified Acts 1989, No. 191 (applying only to first class cities with the mayor-council form of government with populations between 37,000 and 70,000 according to the 1980 federal census and stating that such cities "may add two more members to its civil service commission. . . .")
You have not indicated whether your question pertains to a civil service commission for police and fire department employees (uniformed employees), or for non-uniformed employees, or both. I am somewhat uncertain as to your reference to A.C.A. § 14-50-208. It may have been your intention to refer to A.C.A. § 14-51-208, rather than 14-50-208. That provision, contained in the first-mentioned subchapter and adopted with the 1949 act, also provides that "[t]hree (3) of the members shall constitute a quorum in any transaction."
The distinction may be immaterial for purposes of answering your question, however, because the subchapter governing police and fire civil service commissions also mentions "nonuniformed employees (A.C.A. § 14-51-201(a)), and the subchapter governing non-uniformed employees states that if a city that creates a commission for non-uniformed employees already has a commission for uniformed employees, the existing commission shall also be the commission for the non-uniformed employees as well. See
A.C.A. § 14-50-201(c).
In any event, the problem raised by your question is that each of the applicable subchapters originally authorized boards comprised of five members and stated the quorum requirement as being three members, but each was later amended to authorize an increase in the membership of such boards from five to seven members, without also addressing or adjusting the statutes regarding the quorum requirement.
You have asked whether the three-member requirement applies to a seven-member board or whether a majority of four members is required to constitute a quorum.
The question in my opinion is one of legislative intent. The Arkansas Supreme Court has "repeatedly held that the basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the legislature."Burford Distributing, Inc., v. Starr, 341 Ark. 914, 916,20 S.W.3d 363 (2000), citing Nelson v. Timberline Int'l, Inc.,332 Ark. 165, 964 S.W.2d 357 (1998); and Graham v. Forrest CityHousing Auth., 304 Ark. 632, 803 S.W.2d 923 (1991). See also,Stapleton v. M.D. Limbaugh Constr Co., 333 Ark. 381,969 S.W.2d 648 (1998); and Pugh v. St. Paul Fire Marine Ins. Co.,317 Ark. 304, 877 S.W.2d 577 (1994). The court in Burford also stated that "[i]n attempting to ascertain legislative intent, this court will look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, legislative history, and other appropriate matters that shed light on the matter." Id., citing Nelson, supra and Board ofTrustees v. Stodola, 328 Ark. 194, 942 S.W.2d 255 (1997).
The legislative history, as discussed above, indicates that the three-member quorum requirement was added at a time when the board membership was five members. Later authorization was added to increase the board's membership from five to seven and the new provisions stated that, with exceptions not relevant here, "the law applicable to the commission shall apply to the additional members." A.C.A. § 14-51-201(c) and Acts 1989, No. 191. This phrase is not particularly helpful in addressing proper construction of the statutory quorum requirement after the increase in the number of board members. In my opinion, however, the three-member quorum requirement should be read as having been impliedly amended in those cities that have increased the membership of their boards from five to seven. It has been held that a legislative act must be interpreted in a manner contrary to its express language when it is clear that an omission circumvents legislative intent. The Arkansas Supreme Court addressed this principle in Neely v. State, 317 Ark. 312,877 S.W.2d 589 (1994), as follows:
 We are very hesitant to interpret a legislative act in a manner contrary to its express language; however, we must do so when it is clear that a drafting error or omission circumvents legislative intent. In Johnson v. United States Gypsum Co., 217 Ark. 264, 229 S.W.2d 671 (1950), we quoted State ex rel Atty. Gen. v. Chicago Mill Lbr. Co., 184 Ark. 1011, 45 S.W.2d 26 (1931), and held "When a word in a statute is omitted or misused it is the duty of the courts to disregard the error if the context plainly indicates the legislative intent." See also Dollar v. State, 287 Ark. 61, 697 S.W.2d 868 (1985); Murphy v. Cook, 202 Ark. 1069, 155 S.W.2d 330
(1941).
Id. at 318.
In addition, it has been stated that "[a] statute may be amended by necessary implication under the provisions of a later act, although the statute amended is not mentioned in the amending act." City of Little Rock v. Black Motor Lines, Inc.,208 Ark. 498, 501, 186 S.W.2d 665 (1945), citing Porter v. Waterman,77 Ark. 383, 91 S.W. 754 (1906); and Pace v. State Use SalineCounty, 189 Ark. 1104, 76 S.W.2d 294 (1934).
With regard to the requirement of a quorum, one of my predecessors addressed the general rule in Op. Att'y Gen.1996-384:
It has been stated, generally, that:
 [a]t common law and under various statutes and charters, a majority of the governing body constitutes a quorum[.] . . . In reckoning a quorum, the general rule is that, in the absence of a controlling charter or statutory provision affecting the rule, the total number of all the duly elected and qualified members of the body elected to it is taken as the basis.
Id. at 2, quoting 62 C.J.S. Municipal Corporations § 399(b) (1949).
In my opinion, therefore, a majority of all the members of an expanded seven-member board should be four members. I cannot conclude that the legislature intended a three-member quorum for a seven-member board. In my opinion the Arkansas Supreme Court, if faced with the question, would read the applicable statute as having been impliedly amended in this respect. My conclusion is reinforced by the following language of East Poinsett CountySchool District #14 v. Massey, 317 Ark. 219,876 S.W.2d 573(1994), wherein the court discussed the appropriate quorum requirement where one member of a six-member board had resigned:
 The position of the appellants that a quorum pertaining to a five-member board is all that was required after Linda Hinton's resignation does not withstand scrutiny. Such a liberal interpretation would mean that two members of a three-member quorum would be a majority of a six-member school board and could effect board business. This argument may have some surface appeal because of the necessity of continuing school business even in the face of a resignation. However, the requirement of a quorum is a protection against totally unrepresentative action in the name of the full body by a rump section of the membership. See Robert's Rules of Order 20 (Sarah Corbin Robert et al. eds., 1990). The appellants' interpretation is at odds, in our judgment, with the concept behind the quorum mandate, and we agree with the chancery court that a quorum of the original board, that is, four members, was required to be present to conduct the business of the board on August 10, 1992. Thus, the action taken by three members of the board was a nullity.
Id. at 224.
In my opinion the reasons behind the quorum requirement, as expressed above, and the applicable legislative history, lead to the conclusion that in cities that have increased the board membership to seven, the applicable quorum requirement would be interpreted as having been impliedly amended to four members.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh